IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MATTHEW DOUGLAS WHITE,

              Petitioner,

     vs.

JOE LIZZARRAGA,[1] Warden, Mule Creek
State Prison,

           Respondent.

No. 2:14-cv-01797-JKS

ORDER
and
MEMORANDUM DECISION

Matthew Douglas White, a state prisoner proceeding *pro se*, filed a Petition for a Writ of
Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  White is in the custody of the
California Department of Corrections and Rehabilitation and incarcerated at Mule Creek State
Prison.  Respondent has answered, and White has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

On July 17, 2006, White was charged with second-degree murder (count 1), gross
vehicular manslaughter while intoxicated (count 2), driving under the influence causing injury
(count 3), felony driving with .08 percent blood alcohol causing injury (count 4), misdemeanor
driving when privilege revoked (count 5), misdemeanor exhibition of speed (count 6), and
infraction of passing on the right (count 7).  The information also alleged as to counts 3 and 4
multiple victim and great bodily injury allegations as to three people.  The charges stemmed
from a May 2, 2006, incident in which White, while intoxicated and speeding, hit a car stopped

---

[1]      The correct spelling of Respondent's name is "Lizarraga."  The Clerk of Court is
respectfully directed to amend the official caption to reflect this spelling.

on the shoulder of the highway with its hazard lights on, killing its occupant and injuring two passengers in White's car.

After pleading not guilty to the charges, White filed a *Pitchess* motion[2] with respect to Officer Jason Gonzalez, the California Highway Patrol ("CHP") Officer who was dispatched to the scene of the collision, served as primary investigator, and wrote a 34-page report on the collision.   White sought names, addresses, and phone numbers of those filing complaints against Gonzales for dishonesty, morally lax character, false reports or arrests, and fabrication of accident reports, charges or evidence, as well as all statements in such complaints or by those interviewed due to the complaints.   The motion was accompanied by a declaration of White's counsel stating there were significant inconsistencies concerning major contested issues in the two reports Gonzales prepared.   The defense wanted the information to locate witnesses and assess credibility, and to cross-examine, impeach, and refresh the recollection of witnesses.

Pursuant to White's motion, the trial court held an in camera hearing on April 7, 2009, with only an attorney representing the CHP present.   At that closed hearing, the court asked the CHP attorney if she had reviewed the records.   She responded that she had, but had not reviewed the entire personnel file.   The court asked if there appeared to be anything relevant to the identified issues and she replied, "Nothing at all, Your Honor."   The court noted for the record

---

[2]       In *Pitchess v. Superior Court*, 522 P.2d 305 (Cal. 1974), the California Supreme Court recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge.  In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as a *Pitchess* motion through the enactment of California Penal Code §§ 832.7 and 832.8 and California Evidence Code §§ 1043 through 1045.  *People v. Mooc*, 36 P.3d 21, 24 (Cal. 2001) (citations omitted).

that the files had been reviewed, and there was nothing discoverable and no relevant evidence regarding the officer.  The trial court thus denied the *Pitchess* motion.

White then proceeded to a jury trial on March 24, 2009.  On April 14, 2009, the jury returned guilty verdicts on all charges.  The trial court subsequently sentenced White to an indeterminate term of 15 years to life on count 1 as well as a determinate term of 2 years on count 3, to be served before the indeterminate term.  The court struck the enhancements with respect to count 3 and also imposed concurrent local time on counts 5, 6, and 7.

Through counsel, White appealed his conviction, requesting that the appellate court independently review the materials considered by the trial court in the in camera *Pitchess* hearing.  The State agreed that the Court of Appeal should review the sealed material to determine if the trial court abused its discretion in denying White's *Pitchess* motion.  On January 2011, the Court of Appeal issued a reasoned, unpublished opinion conditionally reversing White's judgment and remanding his case to the trial court with instructions to hold a new in camera review.  *People v. White*, No. C063838, 2011 WL 193382, at *1 (Cal. Ct. App. Jan. 11, 2011).  The appellate court determined that a new hearing was necessary because the trial court had failed to follow the well-established procedure required under California law for adjudication of a *Pitchess* motion:

> The trial court failed to follow this procedure.  No documents were presented to the trial court for review and the court did not question the attorney for the CHP, the custodian of records here, about what documents (or category of documents) she reviewed.  The record indicates only that she did not review the entire personnel file.  The decision as to whether there were any relevant documents was made entirely by the custodian.  The trial court improperly deferred to the custodian's judgment, without any review or questioning.  Further, there is no record of what documents were reviewed for the decision that no documents needed to be disclosed, and therefore no appellate review is possible.

*Id.* at *3.

The Court of Appeal further directed that, "[i]f the trial court finds there are discoverable records, they shall be produced and the court shall conduct such further proceedings as are necessary and appropriate.  If the court finds there are no discoverable records, the judgment shall be reinstated as of that date."  *Id.* at *4.

After remand, White filed in the superior court a counseled motion for a new trial/petition for a writ of habeas corpus alleging that trial counsel improperly stipulated to White's blood alcohol level and the identity of the victim without White's consent.  On December 19, 2011, the trial court heard the *Pitchess* motion and found that there was nothing discoverable in the officer's file.  The judgment was thus reinstated.  The trial court also found that it lacked jurisdiction to hear White's motion for a new trial/petition for a writ of habeas corpus because the issues raised were appropriate only for appellate relief.  The trial court stated that "the new trial motion and the writ should have been raised as part of the appeal and would be appropriate before the appellate court.  This court has limited jurisdiction as to exactly where it can proceed with the case given the fact that it has been through the appellate court."

White's counsel then filed a petition for a writ of mandate and a request for stay in the Court of Appeal, arguing that the trial court erred in ruling that it did not have jurisdiction to hear his motion for a new trial.  The petition was denied without comment the following day.  White then petitioned for review in the California Supreme Court, which was summarily denied on February 29, 2012.

On January 30, 2012, White, proceeding through counsel, appealed the trial court's finding that it lacked jurisdiction to hear his motion for a new trial/petition for a writ of habeas

4

corpus to the Court of Appeal.  The Court of Appeal denied the appeal on procedural grounds in

a short order stating:

> The court examined the notice of appeal and determined that the order appealed
> from is nonappealable (. . . [The denial of a petition for writ of habeas corpus is not
> appealable.])  To the extent petitioner seeks to raise via habeas a claim of ineffective
> assistance of counsel, he must do so with an original petition filed in [the] first instance
> in the superior court.  Therefore, the appeal filed on January 30, 2012, is dismissed.

White then filed in the superior court a *pro se* petition for a writ of habeas corpus raising

his claim that counsel was ineffective for stipulating to White's blood alcohol content and the

victim's identity.  On January 22, 2013, the superior court issued a reasoned, unpublished

opinion denying White's petition.

White then filed in the Court of Appeal another *pro se* petition for a writ of habeas

corpus, again claiming that counsel was ineffective with regard to the damaging stipulations

which foreclosed White's "only defense" that the incident was an accident.  The appellate court

summarily denied the petition on February 7, 2013.  White also filed his ineffective assistance of

counsel claims in an additional *pro se* habeas petition in the California Supreme Court.  He also

filed an amendment to that petition, alleging that: 1) trial counsel was ineffective for failing to

retest White's blood sample and stipulating to White's blood alcohol content without consent;

2) trial counsel was ineffective for failing to convey to White the prosecution's renewed plea

offer of 10 years' imprisonment; 3) appellate counsel was ineffective for failing to argue that:

a) trial counsel improperly waived White's right to personally appear when counsel stipulated to

White's blood alcohol content; and b) the trial court committed reversible error by not advising

White of his *Boykin-Tahl*[3] rights before accepting trial counsel's blood alcohol content stipulation; and 4) counts 1 through 4 should be dismissed because the prosecution may have destroyed White's blood sample and there was no other evidence of intoxication.  After directing the State to file an informal response to White's claim in the amended petition that counsel failed to convey a plea offer, the supreme court denied the petition without comment on April 23, 2014.

White filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on July 9, 2014.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, White raises the six ineffective assistance of counsel claims he unsuccessfully raised before the state courts.  He alleges that trial counsel was ineffective for: 1) failing to convey a settlement offer; 2) failing to retest the blood sample and investigate whether the sample was lost, misplaced, or destroyed; 3) waiving White's appearance when entering into the stipulation as to the blood alcohol level; and 4) failing to pursue a due process violation for the lost, misplaced, or destroyed blood sample.  He further contends in claim 5 that he is entitled to relief due to the cumulative effect of trial counsel's errors.  Finally, he asserts that appellate counsel was ineffective for not arguing that trial counsel was ineffective for stipulating to White's blood alcohol level in White's absence.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

---

[3]        *Boykin v. Alabama*, 395 U.S. 238 (1969); *In re Tahl*, 460 P.2d 449 (Cal. 1969). Under *Boykin/Tahl*, a conviction may be unconstitutional if the defendant pled guilty without waiving: (1) the right to a jury trial; (2) the right to confront adverse witnesses; and (3) the privilege against self-incrimination.  *Boykin*, 395 U.S. at 243; *Tahl*, 460 P.2d at 456-57.

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where

holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"

*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are

beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was

correctly applied).  It is a fundamental precept of dual federalism that the states possess primary

authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and

application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Here, the last decision was a summary denial by the California Supreme Court on habeas review, which is an adjudication on the merits and entitled to deference.  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.    Timeliness

Respondent urges the Court to dismiss White's Petition as untimely.  The AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or

claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, the initial judgment was entered on April 4, 2009. The record indicates that, on August 11, 2010, White, through counsel, directly appealed only the trial court's denial of his *Pitchess* motion. The Court of Appeal agreed with White and remanded the case to the superior court for a new *Pitchess* hearing on January 11, 2011. Rather than seeking direct appellate review of issues other than the *Pitchess* motion, counsel for White instead filed an initial state habeas petition before the superior court on November 23, 2011. On December 19, 2011, the trial court reinstated the judgment after conducting a new *Pitchess* motion and denied the initial state habeas petition after concluding that it did not have jurisdiction to hear it, as the claims should have been brought before the Court of Appeal on direct appeal.

White did not directly appeal his conviction after the judgment was reinstated, and the one-year limitations period began on March 3, 2012, the day after the 60-day period to seek direct review of the December 19, 2011, reinstated judgment had expired. *See Mendoz v. Carey*, 449 F.3d 1065, 1067 (9th Cir. 2006). Although properly-filed motions for post-conviction relief toll the limitations period, White's initial state habeas petition does not toll the period here because that petition was denied on December 19, 2011, prior to the commencement of the one-year limitations period. *See Waldrip v. Hall*, 548 F.3d 729, 735 (9th Cir. 2000) (although the filing of a state habeas petition "would otherwise have tolled the running of the federal limitations period, since it was denied before that period had started to run, it had no effect on the timeliness of the ultimate federal filing").

On November 14, 2012, White, proceeding *pro se*, filed a second habeas petition in the superior court. Although a petitioner is normally entitled to statutory tolling for the days between state petitions, *i.e.*, "interval" tolling, Respondent contends that White is not entitled to interval tolling between the first and second petitions for two reasons: (1) White's second petition started a new round of petitions for which interval tolling is not available; and (2) White waited an unreasonable amount of time to file the second petition. The Court agrees with both contentions.

Here, the second habeas petition, like the first, was filed in the superior court. In *Delhomme v. Ramirez*, 340 F.3d 817, 820 (9th Cir. 2003), the Ninth Circuit held that a petitioner begins a separate round of review "each time [he] files a new habeas petition *at the same or a lower level*" of the state court system. Thus, through his second state habeas petition, White was not simply proceeding "up the ladder" by correcting deficiencies in the first petition, but rather starting a new round of petitions in the same court. Additionally, among the Ninth Circuit as well as the various federal district courts in California, a consensus has emerged that any delay of sixty days or less is *per se* reasonable for purposes of interval tolling, but that any delay "substantially" longer than sixty days is not reasonable.[4] *See, e.g.*, *Goff v. Warden, Cal. Corr.*

---

[4] California has an unusual system of habeas review in which each level of the court system has original jurisdiction, and each original habeas petition must be filed within a reasonable time. *Maxwell v. Roe*, 628 F.3d 486, 496 (9th Cir. 2010) (citing *Evans v. Chavis*, 546 U.S. 189, 198 (2006)); *In re Sanders*, 981 P.2d 1038, 1042 (Cal. 1999) ("A tension is thus created between society's desire for finality of its criminal judgments and its insistence the person being punished is actually guilty of the crimes of which he or she was convicted. One way we attempt to resolve this tension is to require collateral challenges be filed promptly, but to excuse delay on a showing of good cause."). "Until the California Supreme Court indicates otherwise, we 'operate[ ] on the assumption that California law . . . [does] not differ significantly from the laws of other States, i.e., that California's 'reasonable time' standard [does] not lead to filing delays substantially longer than those in States with determinate timeliness rules." *Chaffer*

*Ctr.*, No. 13-cv-00080, 2013 WL 1907494, at *5 (E.D. Cal. May 7, 2013) (collecting cases). The record here demonstrates an unexplained delay of nearly one year between the denial of White's first petition on December 19, 2011, and the filing of his second habeas petition on November 14, 2012. Accordingly, 256 days had elapsed from the time the one-year period commenced on March 3, 2012, and White filed his second habeas petition on November 14, 2012.

As Respondent concedes, the one-year period was properly tolled under § 2244(d)(2) for the time period that White's second and third state habeas petitions were pending (November 14, 2012, to February 7, 2013). The limitations period was therefore extended by 86 days, or from March 2, 2013 to May 27, 2013. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

Respondent argues, however, that no interval tolling is available for the period between the denial of the third habeas petition to the Court of Appeal on February 7, 2013, and the filing of the fourth petition to the California Supreme Court on May 29, 2013, because the delay of 110 days was unreasonable. In his Traverse, White contends that the delay was reasonable because the fourth petition underwent "a complete rewrite." It is clear that the Supreme Court and Ninth Circuit have held that unexplained delays of greater than thirty to sixty days are considered unreasonable and not subject to tolling.[5] *See Chavis*, 546 U.S. at 201; *see e.g.*, *Velasquez v.*

---

*v. Prosper*, 592 F.3d 1046, 1048 (9th Cir. 2010) (citing *Chavis*, 546 U.S. at 198). "The fact that California's timeliness standard is general rather than precise may make it more difficult for federal courts to determine just when a review application (i.e., a filing in a higher court) comes too late." *Chavis*, 546 U.S. at 193 (citing *Carey v. Saffold*, 536 U.S. 214, 223 (2002)).

[5]      "The United States Supreme Court has clarified that when a postconviction [habeas] petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." *Trigueros v. Adams*, 658 F.3d 983, 988-989 (9th Cir. 2011) (citing *Pace*, 544 U.S. at 414). While consideration on the merits is a "factor," in determining whether a California habeas petition is timely filed the Ninth Circuit does not consider untimeliness under state law an "absolute bellwether" of timeliness for § 2254 purposes. *See id.* at 989-90 (9th Cir. 2011);

*Kirkland*, 629 F.3d 964, 968 (9th Cir. 2012) (delays of 81 and 91 days unreasonable; *Chaffer v.*

*Prosper*, 592 F.3d 1046, 1048 (9th Cir. 2010) (delay of 146 days unreasonable).  However,

whether tolling applies to such delays when good cause is provided remains an open question.

Other courts, when presented with delays significantly exceeding 60 days, have found the

delay reasonable and entitled to interval tolling where the subsequent petition was substantially

rewritten.  *See Osumi v. Giurbino*, 445 F. Supp. 2d 1152, 1158-59 (C.D. Cal. 2006) (finding 96-

and 98-day delays "not unreasonable given the lengthy briefs petitioner filed in the California

appellate courts and petitioner's substantial rewriting of his habeas corpus petition following the

denial of that petition by the Los Angeles County Superior Court"); *see also Tidwell v. Knipp*,

No. 2:11-cv-0489, 2013 WL 1704984, at *5 (E.D. Cal. Apr. 18, 2013) (findings and

recommendation revised to conclude that a 77-day delay was reasonable because the petition

was "not identical to the previously-filed petition.  It is longer, addresses the superior court's

decision, and includes additional record and legal cites."); *Warburton v. Walker*, 548 F. Supp. 2d

---

*Maxwell*, 628 F.3d at 496 (citing *Chavis*, 546 U.S. at 194).  Accordingly, the Court "must determine timeliness when there is no clear indication by the state court."  *Maxwell v. Roe*, 628 F.3d at 496 (citing *Chavis*, 546 U.S. at 198).

   Here, after White filed his fourth petition, he subsequently filed on October 17, 2013, an amended supplemental petition raising his claim that trial counsel was ineffective for failing to convey a plea offer.  On January 10, 2014, the California Supreme Court ordered Respondent to file an informal response to the claim raised in the supplemental petition.  In their response, Respondent argued that the claim was time-barred and without merit.  The California Supreme Court's order simply stated, "The petition for writ of habeas corpus is denied," without citation to cases indicating that the Petition was untimely.  *See Walker v. Martin*, 562 U.S. 307, 310 (2011) ("California courts signal that a habeas petition is denied as untimely by citing the controlling decisions, i.e., *Clark* and *Robbins*.").  Such a denial constitutes a decision on the merits.  Further, the fact that the California Supreme Court requested briefing on the merits of the claim rather than dismiss the petition outright as untimely is a factor in favor of finding the petition timely.  The Court must therefore determine if there was reasonable justification for the delay in filing his habeas petition with the California Supreme Court.

835, 840 (C.D. Cal. 2008) (69-day delay reasonable because petitioner amended petition before

filing in Court of Appeal); *Stowers v. Evans*, No. CIV 05-2067, 2006 WL 829140, at *2 (E.D.

Cal. Mar. 29, 2006) (87-day delay not unreasonable because second petition was substantially

re-written).  White's fourth habeas petition is lengthy (totaling 32 pages) and contains numerous

citations to case law and the record.  A comparison of the third habeas petition and the fourth

habeas petition appears to indicate that White is correct that his fourth petition, although raising

the same claims, was substantially rewritten.  The Court therefore concludes that the delay was

not unreasonable and thus White is entitled to interval tolling for the 110-day period between the

denial of his third petition and filing of his fourth petition, as well as tolling under § 2254(d)(2)

of 329 days from May 29, 2013, to April 23, 2014, while his fourth petition was pending.  The

statute of limitations was thus tolled for an additional 439 days, or from May 27, 2013, to August

9, 2014.  Because White's Petition before this Court indicates that he submitted it to prison

officials on July 9, 2014,[6] it appears that White's Petition is timely and will be considered on the

merits.[7]

---

[6]       This Court is obligated to give White the benefit of the "mailbox rule" and
assume that he "filed" his petition on July 9, 2014, the date he signed it and presumably turned it
over to prison authorities.  *See Anthony v. Cambra*, 236 F.3d 568, 574-75 (9th Cir. 2000) (citing
*Houston v. Lack*, 487 U.S. 266, 275 (1988)).

[7]       In his Traverse, White also argues that his Petition is timely because the statute of
limitations was tolled from January 30, 2012 (the date counsel appealed the trial court's finding
that it lacked jurisdiction to hear his motion for a new trial/petition for a writ of habeas corpus)
and October 4, 2012 (the date the appeal was denied), and he is entitled to equitable tolling
because any lapse in the limitations period was due to filing decisions made by appellate and
post-conviction counsel.  With respect to his first contention regarding the appeal of the trial
court's finding that it lacked jurisdiction, as previously mentioned, that appeal was denied on
procedural grounds after the Court of Appeal "determined that the order appealed from is
nonappealable." It is therefore not clear that the January 30, 2012, filing constitutes a "properly
filed application for State post-conviction or other collateral review with respect to the pertinent

B. Merits of Ineffective Assistance of Counsel Claims

In his *pro se* Petition, White argues that his trial and appellate counsel were ineffective for a variety of reasons.

  1.  *Strickland* Standard on Federal Habeas Review

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[8]  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*

---

judgment or claim" that tolls the one-year limitations period under § 2244(d)(2).  *Cf. Pace*, 544 U.S. at 413 (habeas petitioner's state postconviction petition, which was rejected by the state court as untimely under the state statute of limitations, was not "properly filed" within the meaning of § 2244(d)(2)).  Likewise, while appellate counsel's decision to appeal only the *Pitchess* motion denial and bring White's other claims through collateral attacks in superior court certainly led to an unusual procedural posture and impacted when his conviction became final and the commencement of the one-year state of limitations, it cannot be said that counsel's actions in state court directly prevented him from timely filing his federal petition, thus foreclosing any possibility of equitable tolling.  *See Randle v. Crawford*, 604 F.3d 1047, 1055 (9th Cir. 2009) (holding that appellate counsel's failure to timely perfect a direct appeal in state court, which petitioner argued delayed his filing of his state habeas claim and in turn delayed his filing of his federal habeas claim, did not warrant equitable tolling because petitioner failed to show a "causal connection" between counsel's actions and his failure to timely initiate a federal proceeding).  Indeed, White could have timely filed suit in federal court and immediately moved for a stay and abeyance to fully exhaust his claims in state court.  *See Rhines v. Weber*, 544 U.S. 269, 275 (2005).

  [8]  With respect to White's claim that his trial counsel's stipulations constituted ineffective assistance of counsel, the Ninth Circuit has confirmed that *Strickland*, which requires showing that counsel's deficient performance prejudiced defense, rather than *United States v. Cronic*, 466 U.S. 648, 659-60 (1984), which allows for presumption of prejudice, governs a federal court's assessment of a habeas petitioner's ineffective assistance claim arising from defense counsel's stipulations where, as here, defense counsel's performance did not reveal "a complete failure to test the State's case."  *See Allerdice v. Ryan*, 395 F. App'x 449, 451 (9th Cir. 2010).

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, White must show that either his trial or appellate counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for either counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

2.      Ineffective Assistance of Trial Counsel Claims (Grounds 1-5)

a.    *Failure to convey settlement offer*

White first alleges that the People made a 10-year offer to settle his case, which he would have accepted, but his trial counsel failed to convey the offer to him.

The *Strickland* standard also applies to claims of ineffective assistance during the plea bargain process.  *See Lafler*, 132 S. Ct. at 1384 ("During plea negotiations, defendants are 'entitled to the effective assistance of competent counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  Specifically, "a defendant has the right to make a reasonably informed decision whether to accept a plea offer."  *See Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (citation omitted).  Accordingly, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012); *see also United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994) ("[A]n attorney's failure to communicate the government's plea offer to his client constitutes unreasonable conduct under prevailing professional standards.").

White first raised this claim to the California Supreme Court in his amended supplemental petition for habeas relief.  In support of that claim, White attached a December 22, 2009, article from the Stockton Record newspaper which reported that Deputy District Attorney Traverso stated he had offered White a 10-year sentence if he pled guilty.  White also included a declaration dated June 14, 2012, from San Joaquin County Public Defender Michael Bullard, who represented White on remand to superior court, which stated in relevant part:

> During the course of my representation of Mr. White I spoke to . . . Traverso [] regarding a plea deal for Mr. White.  I asked [Traverso] if he had ever offered Mr. White a chance to resolve his case pre-trial.  [Traverse] told me that he had offered Mr. White an opportunity to resolve[] his case pre-trial for a 10 year determinate state prison

16

sentence. [Traverso] told me that he had made this offer a couple of time[s] before the trial started, and that he had conveyed that offer to Mr. White's trial counsel, Mike Platt. [Traverso] then told me that he was concerned that Mr. White might not know that such an offer was being extended to Mr. White, so at a court appearance before the trial started, [Traverso] announced in court, when Mr. White was present, that if Mr. White did not accept his 10 year offer to resolve the case, he would revoke the offer. [Traverso] told me that he made this announcement because he wanted to be sure that Mr. White was aware that he could resolve his case before trial by entering a guilty plea and receiving 10 years in state prison.

As previously noted, the California Supreme Court directed Respondent to file an informal response to White's ineffective assistance of plea counsel claim. Respondent complied with the order but first sought an extension of time to respond. In the motion for an extension of time, counsel for Respondent indicated by signed affidavit under oath, that he had been assigned the matter on January 16, 2014, and that, "[u]pon being assigned the task of completing and filing an informal response, I immediately contacted Deputy District Attorney Traverso and discussed petitioner's claim with him." He further stated, "During our conversation about petitioner's claim, Deputy District Attorney Traverso represented that he recalled making the 10-year offer to both trial counsel and petitioner in open court at a pre-trial conference and his offer should be in the record."

Respondent subsequently submitted an informal answer, which argued that the claim should be dismissed as untimely and without merit. In addressing the merits of the claim, Respondent acknowledged that, contrary to Traverso's assertion, it did not appear that the 10-year offer was recorded at open court. Respondent nonetheless argued that White was not entitled to relief because either the plea was made in the presence of White at open court (as Traverso orally represented) or it was not made at all (as White's trial counsel stated in open court on the record), and, in either event, did not establish a prima facie case of ineffective

17

counsel.  As previously discussed, the California Supreme Court denied the claim without comment or any indication that it was decided on procedural grounds, and thus resolved the claims on the merits.

Before this Court, Respondent does not contend that the record contains mention of the 10-year plea offer, and this Court cannot find such mention in the record either.  Respondent nonetheless again relies on Bullard's declaration to argue, "Petitioner's claim fails because even assuming Deputy District Attorney Traverso made the post-trial statements attributed to him, and those statements are accurate, he made the alleged 10-year offer to Petitioner directly, which he failed to accept."  Respondent conversely relies on Platt's statements on the record, which were corroborated by appellate counsel's letter indicating that he was told the same thing by Platt, to argue that "it was not unreasonable for the state court to conclude that the only offer made to settle the case by Deputy District Attorney Traverso was 15 years to life, which petitioner declined to accept."  Respondent thus argues that the state court's denial of the claim was not an unreasonable application of *Strickland* or *Frye*, and White fails to state a prima facie case for relief under § 2254(d).

But because there is conflicting evidence in the record before this Court as to whether a 10-year offer was made and conveyed to White, the Court is without sufficient information to decide this claim.  Respondent argues, however, that this Court is barred by *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011), from obtaining further information.  In *Cullen*, the Supreme Court reiterated that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claims on the merits."  *See Murray v. Schriro*, 745 F.3d 984, 998 (9th Cir. 2014) ("Along with the significant deference AEDPA requires us to afford state courts'

18

decisions, AEDPA also restricts the scope of the evidence that we can rely on in the normal course of discharging our responsibilities under § 2254(d)(1).”); *Runningeagle v. Ryan*, 686 F.3d 758, 773-74 (9th Cir. 2012) (explaining that *Pinholster* governs discovery, expansion of the record and evidentiary hearings).

But the Supreme Court in *Pinholster* expressly declined to decide “whether § 2254(e)(2) prohibited the District Court from holding the evidentiary hearing or whether a district court may ever choose to hold an evidentiary hearing before it determines that § 2254(d) has been satisfied.”  131 S.Ct. at 1411 n.20.  The Supreme Court thus made no holding in *Pinholster* as to whether a district court may order discovery, expansion of the record, or an evidentiary hearing before it determines whether § 2254(d)(1) has been satisfied on the merits.

Further, although a habeas petitioner is not entitled to discovery “as a matter of ordinary course,” *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), Rule 6(a) of the Rules Governing Section 2254 Proceedings in the Federal Courts provides that “[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery.”  This is true even where it is not clear that further discovery will substantiate the petitioner’s claim.  In *Bracy*, 520 U.S at 904, 909, the Supreme Court held that Habeas Rule 6 was meant to be applied consistently with its prior opinion in *Harris v. Nelson*, 394 U.S. 286, 300(1969), in which the Supreme Court held that “where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.”  In *Bracy*, a unanimous Supreme Court overturned a decision denying discovery where the petitioner’s claim of judicial bias in his

particular case was based on "only a theory," where the claim was "not supported by any solid evidence" with regard to the theory, and where the Supreme Court expressly noted that "[i]t may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to support" the theory that the petitioner sought to pursue in the discovery.  520 U.S. at 908-09.  The Ninth Circuit, consistent with *Bracy* and *Harris*, has held repeatedly that habeas discovery is appropriate in cases where the discovery sought only might provide support for a claim.  *See, e.g.*, *Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997).

Because White has made specific allegations giving this Court reason to believe that he may, if the underlying facts are fully developed, be able to demonstrate entitlement to relief, White has established good cause for discovery under Rule 6(a).  *See Dung The Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) ("[A] district court abuse[s] its discretion in not ordering Rule 6(a) discovery when discovery [i]s 'essential' for the habeas petitioner to 'develop fully' his underlying claim." (quoting *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997)).  Accordingly, the Court will order discovery, and appoint White counsel for that purpose.  *See* Rule 6(a) ("If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.)[9]

If further discovery results in disputes of genuine issues of material fact, the Court will determine at that time whether an evidentiary hearing is necessary.  At the completion of discovery and an evidentiary hearing, if necessary, the Court may then, when and if it reaches a

---

[9]        Although White paid the filing fee in this case, he also submitted a motion to proceed *in forma pauperis*.  Docket No. 2.  A review of that document indicates that White is financially eligible for the appointment of counsel under 18 U.S.C. § 3006A(a)(2).

merits review on the claim, address to what extent *Pinholster* limits the evidence this Court

considers pursuant to its review under 28 U.S.C. § 2254(d).

> b.      *Failure to retest or investigate blood sample and stipulating to blood alcohol level in White's absence*

White additionally argues that trial counsel was ineffective for stipulating to the blood alcohol level in White's absence without first re-testing the blood sample or investigating whether the blood sample had been lost, misplaced, or destroyed, and for not alleging a due process violation with respect to the destroyed sample.  In the last reasoned decision addressing these claims, the superior court relied on *Strickland* to conclude that White was not entitled to habeas relief because, assuming without deciding that counsel's actions were deficiencies, White had failed to show that the deficiencies prejudiced him.  The superior court reasoned:

> Petitioner has failed to allege that evidence existed that either he did not have a blood alcohol level as reflected by the stipulation, or that his blood alcohol test was improperly performed.  Further review of the trial transcript reveals trial testimony in which Petitioner states that he had "[p]robably five, six beers" before driving.

White fares no better on federal habeas review.  With respect to his claim that trial counsel was ineffective for stipulating to the blood alcohol content, the Court notes that a trial counsel's decision to enter into a stipulation involves a matter of trial strategy, and disagreement about trial tactics cannot from the basis for a claim of ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 688; *People of Territory of Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984).  Trial counsel did not stipulate to the blood alcohol level without the benefit of any examination whatsoever.  Counsel so stipulated only after the lab results from White's blood test established that level.  As the superior court noted, White has not identified any flaw in the lab's methodology or results that would have provided defense counsel with a viable basis for objecting to and excluding testimony presenting the lab results, and there was ample evidence in the record indicating that White was highly intoxicated.

As to White's claim that counsel was deficient for stipulating to the level in White's absence, the record reflects that White was present in court when the stipulation was read to the jury.  Trial counsel also stated on the record during a pre-trial hearing, in which it does not appear that White was present, that he had spoken with White about the stipulation, and indicated that White had agreed to it.  In any event, assuming that counsel's representation was untrue, White cannot show prejudice for the same reasons he cannot show that counsel's stipulation prejudiced him.

As he did before the state court on habeas review, White relies on a January 2009 article in the Journal of Clinical Microbiology, entitled "Isopropyl Alcohol Compared with Isopropyl Alcohol plus Povidone-Iodine as Skin Preparation for Prevention of Blood Culture Contamination, " to argue that trial counsel should have realized that the use of alcohol pads to sterilize injection sites can contaminate blood samples.  But such argument is far too speculative to warrant relief here.  *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (granting habeas relief "on the basis of little more than speculation with slight support" is improper).  Moreover, the test described in the article, which was conducted to help determine which antiseptic should be used to effectively minimize contamination in blood cultures, found no significant difference between the two types of antiseptic used in the study.  The article concluded, "The extremely low contamination rates in both groups suggest that the type of antiseptic used may not be as important as the use of proper technique."  J. CLIN. MICROBIOL. Vol. 47, No. 1 at 54 (Jan. 2009).  Because White does not identify any concrete flaw in the technique used, it was also a reasonable trial tactic not to have White's blood sample retested, and White cannot show that he was prejudiced by this tactic.

23

White also argues that trial counsel should not have stipulated to the blood alcohol level knowing that the sample had been lost, misplaced, or destroyed.  But the record does not conclusively indicate that the sample was indeed lost, misplaced , or destroyed.  The only evidence White provides are declarations from himself, his mother, and his friend indicating that White's trial counsel stated that the blood sample was lost or destroyed.  White also provides an affidavit from the attorney who represented him in superior court on remand who stated that he had sent the prosecution a letter asking whether the blood sample had been destroyed, and counsel did not receive a response.  Without more, White's claim is likewise too speculative to warrant relief here.  *See Wood*, 516 U.S. at 8.  For the same reason, White cannot show that he is entitled to relief based on counsel's failure to allege a due process violation for destruction of evidence.  And even if White could show that the State lost or destroyed the blood sample, he again does not demonstrate that the evidence possessed exculpatory value, nor does he allege the State lost or destroyed the evidence in bad faith.  *See California v. Trombetta*, 467 U.S. 479, 489 (1984); *see also Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  Accordingly, White is not entitled to any relief on his claim that trial counsel was ineffective with respect to the blood alcohol level stipulation.

c.      *Cumulative error*

White further contends that the cumulative effect of trial counsel's errors warrants reversal of his conviction.  However, White has failed to exhaust this claim.  This Court may not consider claims that have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented.  *See*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To have properly exhausted his state court remedies, White must have presented both the legal arguments and the factual basis to the highest state court.  *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003).

White did not raise this claim at all before the state courts.  In his Traverse, White contends that he exhausted this claim by challenging each error separately before the California Supreme Court.  According to White, his cumulative error claim "is not a separate and distinct constitutional claim . . . which had to be exhausted through the state courts[,]" but [r]ather strictly a question of prejudice based on all the facts and subclaims made in the state court relative to ineffective assistance of counsel."  However, although a claim may be deemed fairly presented for exhaustion purposes where a petitioner asserted a "sufficiently related" or "intertwined" claim in his state-court briefing—such that, by raising one claim, the petition clearly implies another error—that exception does not apply to cumulative-error claims.  *See Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008) ("Briefing a number of isolated errors that turn out to be insufficient to warrant reversal does not automatically require the court to consider whether the cumulative effect of the alleged errors prejudiced the petitioner.").  Because White cannot return to state court to properly exhaust this claim, federal habeas review of this claim is procedurally barred.  *See id.*  The Court therefore denies White's cumulative error claim on that basis.

3.    Ineffective Assistance of Appellate Counsel Claims (Ground 6)

Finally, White contends that his appellate counsel provided ineffective assistance because he failed to allege on direct appeal that trial counsel was ineffective for: 1) stipulating to the blood alcohol level when White was not present; 2) failing to obtain from the trial court White's

personal waiver; and 3) failing to explain to White why he had agreed to such a stipulation.  But as already discussed, those underlying ineffective assistance of trial counsel claims are without merit.  Consequently, White's appellate counsel cannot be ineffective for failing to raise them on appeal.  *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (appellate counsel does not have an obligation to raise every nonfrivolous argument); *Turner*, 281 F.3d at 872 ("A failure to raise untenable issues on appeal does not fall below the *Strickland* standard.").  White is thus not entitled to relief on this ground.

## V. CONCLUSION AND ORDER

Except as to his claim that trial counsel was ineffective for failing to convey an offered plea deal, White is not entitled to relief under any ground raised in the Petition.

**IT IS THEREFORE ORDERED THAT** limited discovery is necessary in this case. The Criminal Justice Act (CJA) Panel is requested to appoint a new attorney for White for the purpose of conducting discovery on White's behalf and, if necessary, to represent White in an evidentiary hearing.

**IT IS FURTHER ORDERED THAT**, within 60 days of the appointment of counsel, the parties shall confer under Federal Rule of Civil Procedure 26(f) and shall prepare and submit to the Court a joint status report that includes the Rule 26(f) discovery plan ("Discovery Plan Date").  The discovery plan shall include anticipated discovery and scheduling of discovery (including a proposed date for discovery cut off).

**IT IS FURTHER ORDERED THAT**, if necessary, each side may file a 3-page brief on any discovery disputes by the close of the Discovery Plan Date.

**IT IS FURTHER ORDERED THAT**, once discovery is complete, the parties shall brief the issue whether White was informed of all plea offers.  The Court has tentatively concluded to deny a Certificate of Appealability as to all issues except whether White was advised regard a ten-year plea agreement.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

Once this Court has received the parties' discovery plan, and considered further briefing by the parties on the results of discovery and any disputed issues of material fact, if any, the Court will either order an evidentiary hearing or enter final judgment, and will ultimately determine whether a certificate of appealability will be granted by this Court.  Until that time, this decision will be subject to revision in conformity with Federal Rule of Civil Procedure 54(b).

Dated: December 8, 2015.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge