1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MATTHEW DOUGLAS WHITE,                    No.  2:14-cv-1797-JKS

12                 Petitioner,

13        vs.                                  FINDINGS AND RECOMMENDATIONS

14   JOE LIZZARRAGA, Warden,

15                 Respondent.

16

17        Petitioner, Matthew White (hereinafter White), is a state prisoner proceeding through

18   counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter was

19   before the undersigned on September 12, 2016, for an evidentiary hearing on petitioner's claim of

20   ineffective assistance of trial counsel during the plea bargain process.  Benjamin Ramos appeared

21   for petitioner; Peter Smith appeared for respondent.

22        On August 10, 2015, this case was reassigned to Senior District Judge James K. Singleton

23   for all further proceedings.  Judge Singleton decided the majority of the claims raised in the

24   petition but concluded that limited discovery was necessary on White's claim that his trial

25   counsel rendered ineffective assistance in failing to convey a plea offer to him.  ECF No. 20.  The

26   parties subsequently conducted discovery, including the depositions of White's trial counsel and

27   the Deputy District Attorney who made the plea offer, and submitted further briefing.  After

28   reviewing the parties' supplemental briefing and the evidence in support thereof, Judge Singleton

1

1    concluded that disputes of genuine issues of material fact still remained.  Accordingly, he referred

2    the matter to the undersigned to hold an evidentiary hearing to determine: (1) whether White's

3    trial counsel communicated the prosecution's plea bargain offer to resolve White's criminal case

4    for a 10-year sentence to White and/or whether the prosecutor communicated such an offer to

5    White; and (2) whether White understood and rejected the offer.[1]  *Id.*

6         This court conducted an evidentiary hearing with regard to those issues, and upon careful

7    consideration of the record, including post-hearing supplemental briefs, and the applicable law,

8    the undersigned recommends that petitioner's claim of ineffective assistance of trial counsel

9    during the plea bargain process be denied.

10   **I. Background**

11        In its unpublished memorandum and opinion affirming petitioner's judgment of

12   conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

13   following factual summary regarding White's crime of conviction:

> Defendant Matthew Douglas White, while intoxicated and
> speeding, hit a car stopped on the shoulder of the highway with its
> hazard lights on, killing its occupant and injuring two passengers in
> defendant's car.  A jury convicted defendant of second degree
> murder (Pen.Code, § 187); gross vehicular manslaughter while
> intoxicated (Pen.Code, § 191.5, subd. (a)); driving under the
> influence, causing injury (Veh.Code, § 23153, subd. (a)) and
> driving with a blood alcohol level of .08 percent or higher, causing
> injury (Veh.Code, § 23153, subd. (b)), both with three
> enhancements for causing great bodily injury (Pen.Code, § 12022.7,
> subd. (a)) and one for inflicting great bodily injury on multiple
> victims (Veh.Code, § 23558); driving with a suspended license
> (Veh.Code, § 14601.1, subd. (a)); exhibition of speed (Veh.Code, §
> 23109, subd. (c)); and unsafe passing on the right (Veh.Code, §
> 21755).  Defendant was sentenced to an aggregate, unstayed term
> of 17 years to life in prison.
>
>                                    * * *
>
> Defendant drove down Interstate 5 at a high rate of speed, weaving
> in and out of traffic.  He was drunk.  The parties stipulated that
> more than an hour later defendant's blood alcohol level was .16

---

[1] Judge Singleton also directed the magistrate judge to "recommend a decision as to what extent *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011), limits the evidence this Court may consider pursuant to its review under 28 U.S.C. §2254(d); and whether counsel's advice to White satisfied *Lafler v. Cooper*, 132 S.Ct. 1376, 1385-86 (2012), with respect to the 10-year plea bargain offer."  ECF No. 29 at 2.

1  percent.  Defendant pulled onto the right shoulder to pass a truck
2  and collided with a car that was stopped on the shoulder.  The
   driver of the stopped car was killed.  The two passengers in
3  defendant's car were injured.

4  *People v. White*, No. C063838, 2011 WL 193382, at *1 (Cal. Ct. App. Jan. 21, 2011).

5        White raised his claim of ineffective assistance of counsel during the plea bargain process

6  in an amended petition for writ of habeas corpus filed in the California Supreme Court.  Resp't's

7  Lodg. Doc. 20 at 21.  The Supreme Court requested additional briefing from the respondent on

8  this claim.  Resp't's Lodg. Doc. 21.  After receiving that briefing (Resp't's Lodg. Doc. 22), the

9  Supreme Court summarily denied the habeas petition.  Resp't's Lodg. Doc. 23.

10  **II.  Standards of Review Applicable to Habeas Corpus Claims**

11        An application for a writ of habeas corpus by a person in custody under a judgment of a

12  state court can be granted only for violations of the Constitution or laws of the United States.  28

13  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

14  application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502

15  U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

16        Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

17  corpus relief:

18              An application for a writ of habeas corpus on behalf of a
   person in custody pursuant to the judgment of a State court shall not
19  be granted with respect to any claim that was adjudicated on the
   merits in State court proceedings unless the adjudication of the
20  claim -

21              (1) resulted in a decision that was contrary to, or involved
   an unreasonable application of, clearly established Federal law, as
22  determined by the Supreme Court of the United States; or

23              (2) resulted in a decision that was based on an unreasonable
   determination of the facts in light of the evidence presented in the
24  State court proceeding.

25        For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

26  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

27  *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

28  ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.*

1  *Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

2  what law is clearly established and whether a state court applied that law unreasonably." *Stanley*,

3  633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

4  precedent may not be "used to refine or sharpen a general principle of Supreme Court

5  jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

6  *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

7  (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

8  widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

9  be accepted as correct.  *Id.*  Further, where courts of appeals have diverged in their treatment of

10 an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

11 *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

12        A state court decision is "contrary to" clearly established federal law if it applies a rule

13 contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

14 precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

15 Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

16 writ if the state court identifies the correct governing legal principle from the Supreme Court's

17 decisions, but unreasonably applies that principle to the facts of the prisoner's case. [2] *Lockyer v.*

18 *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

19 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

20 court concludes in its independent judgment that the relevant state-court decision applied clearly

21 established federal law erroneously or incorrectly.  Rather, that application must also be

22 unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

23 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

24 review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

25 "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

26 _____

27        [2]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be
overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

28 384 F.3d 628, 638 (9th Cir. 2004)).

4

1   'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

2   *Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

3   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

4   must show that the state court's ruling on the claim being presented in federal court was so

5   lacking in justification that there was an error well understood and comprehended in existing law

6   beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

7       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

8   court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

9   527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

10  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

11  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

12  de novo the constitutional issues raised.").

13      The court looks to the last reasoned state court decision as the basis for the state court

14  judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

15  the last reasoned state court decision adopts or substantially incorporates the reasoning from a

16  previous state court decision, this court may consider both decisions to ascertain the reasoning of

17  the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

18  a federal claim has been presented to a state court and the state court has denied relief, it may be

19  presumed that the state court adjudicated the claim on the merits in the absence of any indication

20  or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99.  This presumption

21  may be overcome by a showing "there is reason to think some other explanation for the state

22  court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

23  Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

24  expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

25  the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133

26  S.Ct. 1088, 1091 (2013).

27      Where the state court reaches a decision on the merits but provides no reasoning to

28  support its conclusion, a federal habeas court independently reviews the record to determine

5

1   whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

2   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

3   review of the constitutional issue, but rather, the only method by which we can determine whether

4   a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no

5   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

6   reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 98.

7         A summary denial is presumed to be a denial on the merits of the petitioner's claims.

8   *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

9   just what the state court did when it issued a summary denial, the federal court must review the

10  state court record to determine whether there was any "reasonable basis for the state court to deny

11  relief."  *Richter*, 562 U.S. at 98.  This court "must determine what arguments or theories ... could

12  have supported, the state court's decision; and then it must ask whether it is possible fairminded

13  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

14  decision of [the Supreme] Court."  *Id.* at 102.  The petitioner bears "the burden to demonstrate

15  that 'there was no reasonable basis for the state court to deny relief.'"  *Walker v. Martel*, 709 F.3d

16  925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

17        When it is clear, however, that a state court has not reached the merits of a petitioner's

18  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

19  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

20  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

21  **III.  Petitioner's Ineffective Assistance of Counsel Claim**

22       **A.  Description of Claim**

23        In its December 8, 2015 order, the district court described the claim now before this court,

24  and some of the facts surrounding that claim, as follows:

25           White first alleges that the People made a 10-year offer to settle his
             case, which he would have accepted, but his trial counsel failed to
26           convey the offer to him.

27                                        * * *

28

White first raised this claim to the California Supreme Court in his amended supplemental petition for habeas relief.  In support of that claim, White attached a December 22, 2009, article from the Stockton Record newspaper which reported that Deputy District Attorney Traverso stated he had offered White a 10-year sentence if he pled guilty.  White also included a declaration dated June 14, 2012, from San Joaquin County Public Defender Michael Bullard, who represented White on remand to superior court, which stated in relevant part:

> During the course of my representation of Mr. White I spoke to . . . Traverso [ ] regarding a plea deal for Mr. White.  I asked [Traverso] if he had ever offered Mr. White a chance to resolve his case pre-trial.  [Traverso] told me that he had offered Mr. White an opportunity to resolve[] his case pre-trial for a 10 year determinate state prison sentence.  [Traverso] told me that he had made this offer a couple of time[s] before the trial started, and that he had conveyed that offer to Mr. White's trial counsel, Mike Platt.  [Traverso] then told me that he was concerned that Mr. White might not know that such an offer was being extended to Mr. White, so at a court appearance before the trial started, [Traverso] announced in court, when Mr. White was present, that if Mr. White did not accept his 10 year offer to resolve the case, he would revoke the offer.  [Traverso] told me that he made this announcement because he wanted to be sure that Mr. White was aware that he could resolve his case before trial by entering a guilty plea and receiving 10 years in state prison.

As previously noted, the California Supreme Court directed Respondent to file an informal response to White's ineffective assistance of plea counsel claim.  Respondent complied with the order but first sought an extension of time to respond.  In the motion for an extension of time, counsel for Respondent indicated by signed affidavit under oath, that he had been assigned the matter on January 16, 2014, and that, "[u]pon being assigned the task of completing and filing an informal response, I immediately contacted Deputy District Attorney Traverso and discussed petitioner's claim with him."  He further stated, "During our conversation about petitioner's claim, Deputy District Attorney Traverso represented that he recalled making the 10-year offer to both trial counsel and petitioner in open court at a pre-trial conference and his offer should be in the record."

Respondent subsequently submitted an informal answer, which argued that the claim should be dismissed as untimely and without merit.  In addressing the merits of the claim, Respondent acknowledged that, contrary to Traverso's assertion, it did not appear that the 10-year offer was recorded at open court.  Respondent nonetheless argued that White was not entitled to relief because either the plea was made in the presence of White at open court (as Traverso orally represented) or it was not made at all (as White's trial counsel stated in open court on the record), and, in

1

2          either event, did not establish a prima facie case of ineffective
           counsel.  As previously discussed, the California Supreme Court
           denied the claim without comment or any indication that it was
3          decided on procedural grounds, and thus resolved the claim on the
           merits.

4          Before this Court, Respondent does not contend that the record
           contains mention of the 10-year plea offer, and this Court cannot
5          find such mention in the record either. Respondent nonetheless
           again relies on Bullard's declaration to argue, "Petitioner's claim
6          fails because even assuming Deputy District Attorney Traverso
           made the post-trial statements attributed to him, and those
7          statements are accurate, he made the alleged 10-year offer to
           Petitioner directly, which he failed to accept."   Respondent
8          conversely relies on Platt's statements on the record, which were
           corroborated by appellate counsel's letter indicating that he was
9          told the same thing by Platt, to argue that "it was not unreasonable
           for the state court to conclude that the only offer made to settle the
10         case by Deputy District Attorney Traverso was 15 years to life,
           which petitioner declined to accept."

11

12    ECF No. 20 at 16-18.

13         In his federal habeas petition, White claims that when Traverso[3] became the prosecutor on

14    his case, he "immediately stated that the only plea offer was 15 years to life in state prison."  ECF

15    No. 1 at 26.  Mr. Platt then "whispered in Petitioner's ear 'that's no deal, I'll get it dropped to

16    much less.'"  *Id.*  White claims that after his trial was concluded, he learned that the prosecutor

17    had made a ten-year offer but "trial counsel never conveyed this offer to Petitioner, nor did the

18    prosecution convey it in open court."  *Id.* at 17.  White states that had he learned of the offer, he

19    would have accepted it.  *Id.*

20    **B.  Applicable Legal Standards**

21         The clearly established federal law for ineffective assistance of counsel claims is set forth

22    in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a *Strickland* claim, a defendant

23    must show that (1) his counsel's performance was deficient and that (2) the "deficient

24    performance prejudiced the defense."  *Id.* at 687.  Counsel is constitutionally deficient if his or

25    her representation "fell below an objective standard of reasonableness" such that it was outside

26    "the range of competence demanded of attorneys in criminal cases."  *Id.* at 687–88 (internal

27    _____

28         [3]   At the time of the evidentiary hearing before the undersigned, Mr. Traverso's name had
      been changed to Mr. Conley.

1   quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a

2   fair trial, a trial whose result is reliable.'"  *Harrington v. Richter*, 562 U.S. 86, 104 (quoting

3   *Strickland*, 466 U.S. at 687).

4          A reviewing court is required to make every effort "to eliminate the distorting effects of

5   hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

6   conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 669.  Reviewing courts

7   must also "indulge a strong presumption that counsel's conduct falls within the wide range of

8   reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  This presumption of

9   reasonableness means that the court must "give the attorneys the benefit of the doubt," and must

10  also "affirmatively entertain the range of possible reasons [defense] counsel may have had for

11  proceeding as they did."  *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (internal quotation marks

12  and alterations omitted).  The United States Supreme court has confirmed that the Sixth

13  Amendment right to counsel "extends to the plea-bargaining process."  *Lafler v. Cooper*, ___ U.S.

14  ___, 132 S. Ct. 1376, 1384 (2012).  To prevail on such a claim, a petitioner must demonstrate

15  "'gross error on the part of counsel,'"  *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002)

16  (quoting *McMann v. Richardson*, 397 U.S. 759, 772 (1970)), and that the advice he received from

17  his counsel was "so incorrect and so insufficient that it undermined his ability to make an

18  intelligent decision about whether to accept the [plea] offer.'"  *Id.* (quoting *United States v. Day*,

19  969 F.2d 39, 43 (3d Cir. 1992)).

20         As a general rule, "defense counsel has the duty to communicate formal offers from the

21  prosecution to accept a plea on terms and conditions that may be favorable to the accused."

22  *Missouri v. Frye*, ___ U.S. ___, ___, 132 S. Ct. 1399, 1408 (2012).  *See also United States v.

23  Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994) (a trial counsel's "failure to communicate the

24  government's plea offer to his client constitutes unreasonable conduct under prevailing

25  professional standards.").  Accordingly, when a defense attorney allows a plea offer to expire

26  without advising the defendant about the offer or allowing him to consider it, "defense counsel

27  did not render the effective assistance the Constitution requires."  *Frye*, 132 S.Ct. at 1408.  Trial

28  counsel is also required to "advise a client to enter a plea bargain when it is clearly in the client's

9

1   best interest." *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003).  Further, "where the

2   issue is whether to advise the client to plead or not 'the attorney has the duty to advise the

3   defendant of the available options and possible consequences' and failure to do so constitutes

4   ineffective assistance of counsel." *Blaylock*, 20 F.3d at 1465 (quoting *Beckham v. Wainwright*,

5   639 F.2d 262, 267 (5th Cir. 1981)).

6        Prejudice is found where "there is a reasonable probability that, but for counsel's

7   unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

8   U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

9   outcome." *Id.*  "The likelihood of a different result must be substantial, not just conceivable."

10  *Richter*, 562 U.S. at 189.  A reviewing court "need not first determine whether counsel's

11  performance was deficient before examining the prejudice suffered by the defendant as a result of

12  the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

13  lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.  In

14  cases where trial counsel's defective advice caused the defendant to reject a plea offer and

15  proceed to trial, prejudice is demonstrated where "but for the ineffective advice of counsel there

16  is a reasonable probability that the plea offer would have been presented to the court (i.e., that the

17  defendant would have accepted the plea and the prosecution would not have withdrawn it in light

18  of intervening circumstances), that the court would have accepted its terms, and that the

19  conviction or sentence, or both, under the offer's terms would have been less severe than under

20  the judgment and sentence that is fact were imposed." *Lafler*, 132 S.Ct. at 1385.

21       The Supreme Court has held that strict adherence to the *Strickland* standard is "essential

22  when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 562

23  U.S. 115, 125 (2011).  This is because "[t]he art of negotiation is at least as nuanced as the art of

24  trial advocacy, and it presents questions further removed from immediate judicial supervision."

25  *Id.*  Additionally, "[t]he prospect that a plea deal will afterwards be unraveled when a court

26  second-guesses counsel's decisions while failing to accord the latitude *Strickland*  mandates . . .

27  could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to

28  no one." *Id.*

1        **C.  Evidence Introduced at the Evidentiary Hearing**

2                **1.  <u>Trial Attorney Michael Platt</u>**

3          White's trial counsel Michael Platt was the first witness to testify at the evidentiary

4   hearing.  ECF No. 38 at 4.  He stated that he had been practicing law in San Joaquin County for

5   39 years.  *Id.* at 5-6.  He had been a criminal defense attorney since 2003.  *Id.* at 5.  Prior to that,

6   for approximately 9 years, he was a Superior Court judge in San Joaquin County.  *Id.*  Before

7   becoming a judge, he was a deputy district attorney for three years.  *Id.*  Platt had a caseload of

8   approximately 200 cases per year.  *Id.* at 6.  He was hired to represent White in 2008.  *Id.*

9          Mr. Platt was asked whether he spoke to White about "any possible plea offers."  *Id.* at 10.

10  He responded that his "normal practice," which he followed "in every case," was to convey every

11  plea offer from the district attorney to his client in person at the jail.  *Id.* at 10-11, 15.  When

12  asked whether he specifically remembered following this practice with White, he testified, "I

13  remember doing it, but I don't remember when or how frequent."  *Id.* at 11.  Platt testified that he

14  discussed with White his "maximum exposure," or "what the maximum confinement can be."  *Id.*

15  He also discussed with him the risks of going to trial.  *Id.*

16          Platt testified that there was "a lot of effort made at settlement."  *Id.* at 12.  He stated that

17  "at one point" he received a plea offer from prosecutor Traverso/Conley (hereinafter Conley).  He

18  stated that he "would've taken that offer" to White and that they "discussed it."  *Id.*  He also

19  talked about the offer with White's family.  He stated that he "told them to discuss it and then

20  came back with a rejection of the offers."  *Id.*

21          Platt explained that he had many informal discussions with the prosecutor about the

22  strengths and weaknesses of White's case and "at some point Mr. Conley gave me a formal offer

23  and that was the – what I would take back to the client."  *Id.* at 16.  Mr. Platt did not remember

24  receiving a formal plea offer in writing from the prosecution in White's case.  *Id.* at 17.  He

25  agreed that it was his "duty to convey all offers to a defendant you're representing."  *Id.*

26          Mr. Platt also testified that White was "active" in the plea negotiations.  *Id.* at 19.  He

27  explained that when he would communicate a plea offer to White, White would "say that's too

28  much, I'm not going to resolve it with that."  *Id.* at 19-20.  White did not believe he was guilty of

                                                    11

1    murder and, for this reason, he did not want to accept a plea offer which required him to plead

2    guilty to second degree murder.  *Id.* at 20.  Platt remembered that White was only willing to serve

3    "zero to nine years," but with a preference for serving "a short time in the county jail."  *Id.* at 21.

4            When asked whether he recalled the specific offers made to White by the prosecutor, Platt

5    responded:

6                        I know that there was – and I'll start at the back end and work back.
                        At the, what I believe was a readiness conference, there was a final
7                        offer of the second degree, meaning 15 to life.  Before that was –
                        my recollection was 12 to 13 years, but in reading the deposition
8                        transcripts, there was a 10-year offer maybe somewhere, but it was
                        only one other significant offer before the final offer at the
9                        readiness conference and I don't remember when that was.

10   *Id.* at 23.  Respondent's counsel asked Mr. Platt about his statements at an ex parte March 17,

11   2009 pretrial conference, wherein the trial judge asked Platt, after the prosecutor had been

12   excused from the hearing, whether the prosecutor had made any plea offers.  Platt responded:

13                       The initial offer, Judge, was eight years, eight months, back when
                        Mr. Davenport [White's previous counsel] had – before the prelim,
14                       then I believe went to a ten year offer.  Plus since I've had there's
                        been no offer, it has been it's second-degree, plead to life, and we'll
15                       see what we can do.

16   Resp't's Ex. I at 60, 79.  Mr. Platt testified at the evidentiary hearing that he didn't recall the offer

17   for eight years, eight months because he was not representing White at that time.  ECF No. 38 at

18   23.  He stated that Mr. Davenport, White's previous counsel, must have informed him of the

19   prosecutor's preliminary offer.  *Id.* at 24.

20           When Platt was asked whether his statements at the March 17, 2009 pretrial conference

21   refreshed his recollection of the plea offers that were made while he was representing White, Platt

22   responded:

23                       It tells me that there was an offer of 10 years made, but I didn't say
                        when or whether it was – again, before I came into the case.  But I
24                       came into the case in March of 2008, so that would've been an offer
                        that I would've expected to come to me that I would've then passed
25                       to Mr. White and we would've talked about it.

26   *Id.* Platt did not have a specific recollection of a ten year plea offer, but he would "gauge that it

27   happened" because he had referred to it at the March 17, 2009 pretrial conference.  *Id.* at 24-25.

28   /////

1    He agreed that he "would've taken [the offer] to Mr. White and discussed it with him."  *Id.* at 25.

2    Mr. Platt recalled that petitioner did not want any sentence "that had double digits to it."  *Id.*  He

3    testified that the ten year offer was not accepted.  *Id.* at 25-26.

4          Respondent's counsel then asked Platt about the rest of his statement at the pretrial

5    conference (i.e., "Plus since I've had there's been no offer, it has been it's second-degree, plead to

6    life, and we'll see what we can do").  Platt explained that "my rationale for the statement

7    would've been in between the 10-year offer and the readiness conference offer, second-degree

8    murder with a life sentence, that there wasn't any formal offer made between the 10-year –

9    whenever the 10-year offer was and when the readiness conference offer was made."[4]  *Id.* at 25.

10          Respondent's counsel next questioned Mr. Platt about another exchange at the March 17,

11   2009 pretrial conference, as follows:

12          THE COURT:  Is there any he's [sic] interested in at this point?

13          MR. PLATT:  We have talked, Judge.  I've talked with him about
14          him going back to the offers that were there before.

15          THE COURT:  Explore that if you think –

16          MR. PLATT:  We can, and I would encourage that to the Court,
             because I have talked with my client about it and Mr. Traverso's
17          answer has been, "We're not talking about that, there is no offer."

18   *Id.* at 26; Resp't's Ex. I at 79.  Mr. Platt agreed that these remarks indicated he had talked to

19   White about the prosecutor's plea offers.  ECF No. 38 at 26-27.  He stated, "we had talked about

20   being interested in resolving it short of trial on terms that Mr. White wanted and the DA did not."

21   *Id.* at 26.

22          Respondent's counsel then questioned Mr. Platt about statements he made at a February

23   25, 2009 pretrial hearing to the effect that the prosecution's then existing plea offer was "fifteen

24   to life."  Resp't's Ex. H at 2.  Respondent's counsel asked Platt whether "something happened" to

----

25          [4]  The parties make much of Platt's statement at the March 17, 2009 ex parte hearing that
26   "since I've had, there's been no offer, it has been it's second-degree, plead to life, and we'll see
     what we can do."  Both parties appear to interpret the words "since I've had" to mean "since I've
27   had this case."  While that appears to be a reasonable construction of what was meant at the time,
     Platt's actual statement does not include the additional words "this case" and the statement is
28   somewhat unclear.

13

1   the previous ten year offer.  ECF No. 38 at 28.  Platt responded, "I'm sure it did.  I don't have an

2   independent recollection."  *Id.*

3         Respondent's counsel next questioned Mr. Platt about statements made by White in a

4   declaration filed in support of his California Supreme Court habeas petition.  *See* Resp't's Ex.

5   108.  Those statements were the following:

6             On April 28, 2008 Deputy District Attorney Kevin Ford was
          replaced by Deputy District Attorney Jeff Traverso who

7             immediately stated that the only plea offer was 15 years to life, Mr.
          Platt whispered in my ear "thats no deal, I'll get it dropped to much

8             less," this was in direct reference to our previous discussions
          concerning strategy which included plea negotiations.

9

10   *Id.* at 108-09.  Mr. Platt did not recall whether prosecutor Conley [Traverso] made a plea offer of

11   15 years to life on April 28, 2008, but he testified that, in his experience, the prosecutor would not

12   have made such an offer at that time because it was "too early in the process;" i.e., the trial date

13   had not been set and "there's been no discussion of any facts."  ECF No. 38 at 29-30.  Platt

14   denied that he whispered in White's ear "that's no deal, I'll get it dropped to much less."  *Id.* at

15   30.

16         Mr. Platt testified that he responded to the plea offers made in this case.  *Id.* at 30-31.

17   Specifically, he stated, "The defense always responds to an offer made by the prosecution; either

18   accepts it, or rejects it or comes back with a counter offer."  *Id.* at 30.  Platt could not think of any

19   reason that he would not convey an offer to White.  *Id.* at 31.  When asked what White's response

20   was to "any offer," Platt responded, "that it was too much time, that the facts weren't going to

21   show what Mr. Conley thought they were going to show."  *Id.* at 32.  Platt also stated that White

22   decided not to follow his advice, including "a 10-year offer."  *Id.*  That advice included Platt's

23   opinion that White was "wrong in his evaluation of what the evidence would show."  *Id.*  When

24   he was asked whether he recommended to White that "you should take this offer," Platt

25   responded, "Yes."  *Id.* at 33.  He stated, "I made that recommendation that he should think long

26   and hard before he draws a line in the sand and wants to go to trial."  *Id.*

27   /////

28   /////

1    Mr. Platt also testified that he ran into prosecutor Conley in a state courtroom around the

2    time that discovery was being conducted in connection with the instant habeas matter.  The

3    following colloquy then occurred:

> A.  We were in Department 35.  I was leaving the courtroom from
> the side door.  He was coming in the courtroom.  He had earlier
> said something about being – his testimony being deposed and I
> commented that my recollection was that the offer was 10 years,
> but that's my recollection; yours is yours and testify to what you
> remember.
>
> Q.  So you told Mr. Conley your recollection of the – that the offer
> was 10 years?
>
> A.  Yes.  And it was at the time, and I still think it is, but I don't
> know when and where that 10 years – because I know I've said 12
> to 13 and I don't know if there was two offers or if it was one offer
> that was 10 and not 12 to 13 or 12 to 13.
>
> Q.  So you actually made the comment to Mr. Conley you thought
> it was 10 years?
>
> A.  Yes.

14   *Id.* at 36.

15   Platt also testified that White never told him he had a "hearing issue" or that he couldn't

16   hear what was being said in the courtroom.  *Id.*

17   On cross-examination, Mr. Platt testified that he did not have any clear recollection of a

18   plea offer by the prosecutor for a ten year prison sentence.  *Id.* at 37.  White's counsel asked,

19   "Your recollection is that Mr. Conley made an offer to settle the case for 12 or 13 years, is that

20   correct?"  *Id.*  Platt responded, "That was my recollection, and is still my recollection.  But could

21   it be wrong and it have been 10?  It could've been, but there was an offer made by Mr. Conley."

22   *Id.*  Platt testified that he saw prosecutor Conley in the courtroom at least four or five times prior

23   to trial, and each time he spoke with Conley "either to get an offer, confirm an offer or talk about

24   a counter offer."  *Id.* at 38.

25   Platt further testified that when he became counsel for White, he "became aware that a

26   prior offer had been made to settle this case for eight years, eight months" and that this offer was

27   conveyed to White's former counsel, Mr. Davenport.  *Id.* at 39.  Referring to his statements at the

28   March 17, 2009 pretrial conference, Platt testified that the ten year offer he was referring to

15

would have been conveyed to him and not to Mr. Davenport.  *Id.*  Platt also explained that his

statement "there's been no offer," did not mean he didn't receive a ten year offer.  Rather, his

testimony was that he "received at least two offers, the 10-year offer referenced in the transcript

and then the 15 to life offer that was made later."  *Id.*  He explained that it would not make sense

for the prosecutor to make only one offer for 15 years to life because that was "the ultimate

punishment for second-degree murder," and "that's not plea negotiations."  *Id.* at 44.  Platt also

clarified, however, that he did not have an "independent recollection of the 10-year offer."  *Id.* at

41.  Mr. Platt explained that he did not ordinarily put settlement offers received from the

prosecution into writing for the client, but simply talked to his clients face to face about any offer.

*Id.*  Accordingly, Platt did not believe there was any written record in this case of an offer from

the prosecution for a 10 year plea bargain.  *Id.* [5]

Platt testified that he did not remember the prosecutor telling Platt and White in open

court that the 10 year offer was still open but would be withdrawn if it was not accepted by the

next court appearance.  *Id.* at 43.  However, later, the following exchange occurred:

> Q.  (By petitioner's counsel): But specifically with regard to Mr.
> Conley's last in-court 10-year offer where he said this is Mr.
> White's last chance, you had no discussion with Mr. White about
> Mr. Conley's statement, is that correct?
>
> A.   No.   He was sitting there and I – did I ask him does he
> understand that?  No.  I thought the words were very plain that
> that's where the line was being drawn in the sand and that we were
> going to trial if it wasn't accepted.
>
> Q.  So you believe that Mr. White understood all the specifics of
> whatever 10-year offer Mr. Conley was making at that point?
>
> A. He certainly should have, yes.

*Id.* at 46-47.  Still later, on re-direct, this further following colloquy occurred:

> Q.  I just briefly want to touch on – counsel mentioned the last offer
> made by Mr. Conley in court to settle the case for 10 years.  Do you
> recollect that offer being made?
>
> A.  No.

---

[5]  Platt testified he did not have possession of his file because he "sent it to either
Matthew [White] or to an appellate attorney and I don't remember which."  *Id.* at 9.  The file had
not been recovered at the time of the evidentiary hearing.

Q.  Could have it [sic] been made?

A.  It could have.

Q.  You just don't remember?

A.  Yes.

Q.  Okay.

A.  And it wasn't a conversation.  It was – as I looked at the – it was a statement that that's what the facts were, it was going away.

A.  Thank you.

*Id.* at 47.  Platt also testified he would have explained to White that if he did not accept a plea offer, "they could sentence him to a life term in prison."  *Id.* at 46.

Mr. Platt agreed that before White could plead guilty, he would need to fully understand the charges to which he was going to plead and the full extent of his punishment.  *Id.* at 48. However, Platt could not recall any of those particulars at the time of his testimony at the evidentiary hearing.  *Id.*

### 2.  Movant Matthew White

Mr. White testified that his first trial counsel was Mr. Davenport, who communicated one plea offer to him of "10 years with half," but then said, "don't worry about it, I'll get it dropped down to six years with half."  ECF No. 38 at 57-58.  White rejected that ten year offer.  *Id.* at 74. He then hired another attorney, who represented him for another 13 or 14 months.  That attorney did not convey any plea offers to him.  *Id.* at 58.  White then hired Mr. Platt to represent him.  *Id.* at 59.

According to White, the first plea offer Mr. Platt communicated to him was "fifteen to life."  *Id.*  That offer was communicated on April 28th, 2008, the same day that Conley made his first appearance.  *Id.*  Platt told him "not to worry about it, that he's going to get it dropped down to much less."  *Id.*  White testified that this same offer of "fifteen to life" was communicated to him on a regular basis, five or six times, prior to the offer being mentioned in court at the pretrial hearing on February 25, 2009, by both Platt and the prosecutor.  *Id.* at 60.  The only offer that Mr. Platt ever communicated to White was a "15-year offer."  *Id.*

17

White estimated that he was present at approximately "a dozen" court appearances prior to trial and that Mr. Platt spoke with the prosecutor at each conference. *Id.* Mr. Platt never communicated to him that the prosecutor had made an offer to settle the case for ten years. *Id.* Respondent's counsel asked White whether, about a month or two before trial, he heard Conley make a verbal offer to settle the case for 10 years that he communicated in the courtroom. White answered:

> No. In fact, when I read that in his deposition I was surprised and went back and reviewed the record myself and also found the same thing, that there was nothing there. So no.

*Id.*

Mr. White also testified that he asked Platt to conduct certain investigations with the objective of "get[ting] the information so that he could use it for the purposes of negotiating a plea deal." *Id.* at 61. He stated that he didn't ever tell Platt "what sort of plea deal [he] hoped to get" because he had "no idea what these cases plead for." *Id.* at 61-62. White denied that he ever received a plea offer for "eight years and eight months." *Id.* at 62. When Platt told the court during the March 17, 2009 pretrial conference that "since I've had, there's been no offer, it has been it's second-degree, plead to life," this statement was consistent with White's understanding that since Platt "had the case there's been no offer." *Id.* Specifically, his understanding was "the only offer was 15 years." *Id.* White testified his understanding in this regard was confirmed by the statements made at both the February 25 and March 17, 2009 pretrial conferences that the only offer at that time was fifteen years to life. *Id.* Mr. Platt never communicated to him a ten year offer to settle the case. *Id.* at 64. The only offer he was aware of when Mr. Platt was representing him was "15 years to life." *Id.* at 81.

White also testified that if a ten year offer had been conveyed to him he would have accepted it. *Id.* He noted that Mr. Platt stipulated to his blood-alcohol level, which White thought should have been a contested issue at trial. He stated that he did not want to testify and that he did not want to proceed to trial because he did not believe the defense was prepared for trial. *Id.* at 64, 73, 75.

/////

18

On cross-examination, White testified that he did not accept the ten year offer conveyed to Mr. Davenport because Davenport advised him not to and because the offer was made before the preliminary hearing. *Id.* at 75. He testified that he would have accepted that offer after he was formally charged with second-degree murder. *Id.* He testified that he told Platt to "plead this case out." *Id.* at 76. White "didn't want to take the risk of going to a trial with a second-degree murder charge" because that charge "carries a life sentence." *Id.* at 77.

White testified that he was active in representing himself even though he had retained counsel, and that he participated in presenting a motion to compel in state court. *Id.* at 82. During the March 17, 2009 pretrial hearing, when Platt listed the various offers that had been extended to White, including an offer for eight years, eight months, and an offer for ten years, White was surprised. *Id.* at 83. He "said something" to Platt, but did not speak up in court. *Id.* White testified that the only offer Platt discussed with him was the offer for fifteen years to life. *Id.* at 85.

White again denied on cross-examination that Conley informed him about the ten year plea offer in open court. *Id.* at 92. He explained that he originally thought he just didn't hear the offer, but then decided "it didn't happen" because the offer did not appear in the reporter's transcript. *Id.* White stated he was born with a hearing deficit. *Id.* at 92-93. However, he does not wear a hearing aid. *Id.* at 93.

White testified that he had not been "involved in any plea negotiations other than Mr. Platt telling you the offer is 15 years to life" for second degree murder. *Id.* at 94. He stated this was the only offer extended by prosecutor Conley and that, prior to the time that Conley was the prosecutor, "there was no offer." *Id.*

### 3. Prosecutor Conley

Prosecutor Conley also testified at the evidentiary hearing. *Id.* at 102. He stated that he had not been able to review his file because his office couldn't find it in the storage unit. *Id.* at 104-05. [6] He explained that the practice in San Joaquin County at the time he was prosecuting

---

[6] Neither Platt nor Conley were able to refresh their recollections of the pertinent events by reading their files because those files were either lost or misplaced. This has complicated the

1  White's case was for the prosecutors and defense counsel to informally, verbally discuss plea

2  offers during court appearances.  *Id.* at 106-07.  Sometimes he documented plea offers in his file,

3  but not always.  *Id.* at 108.

4          Conley recalled that when he received the case, White had already received an offer from

5  the previous prosecutor.  *Id.* at 109.  Conley described that as a "seven-year offer," but later

6  testified it could have been "eight years, eight months."  *Id.* at 109, 112.  He kept that offer open

7  for "a reasonable amount of time" so that Mr. Platt could have time to discuss the offer with

8  White.  *Id.*  Respondent's counsel asked Conley, "would it be your practice to, on your first

9  appearance in April of 2008 to make an offer of 15 years to life consistent with pleading to

10  second-degree murder in this case?"  *Id.* at 110.  Conley responded, "My very first appearance on

11  the case, no."  *Id.*  He explained that such an offer would be "ridiculous," "bullying," and "unfair

12  to the defendant" because it was "not an offer at all."  *Id.*  Conley remembered that after his initial

13  offer was not accepted, he made another offer to White, which Conley explained as follows:

14  "What I remember is either eight or 10 years, it was in that range.  I want to say closer to 10

15  years."  *Id.* at 111.

16          Mr. Conley further explained that the 10 year offer "lasted a couple of months of

17  consideration."  *Id.* at 112.  Conley received counter offers from White which he did not consider

18  to be "serious," and he came to believe that White was not "ever going to take any of my offers."

19  *Id.*  He testified that he told Platt the original offer was being left open.  *Id.*  Specifically, the

20  following colloquy occurred:

21              Q.  Okay.  Let me stop you there.  When you said you left the
              seven-year offer open, could the seven-year offer have been
22              something else like eight years, eight months?

23              A.  It could've.

24              Q.  And when you said you left it open, did you advise anybody on
              the defense that that offer was being left open?
25
              A.  Mr. Platt.
26

27

28  task of ascertaining the facts surrounding the plea offers extended to White.

1

> Q.  Mr. Platt?   And do you remember how many times you made
> that representation?

2

3

> A.  If I remember the conversation correctly, we talked and he said
> well back in Lodi he had this offer and I said okay, well that offer
> will be good so that you can have a conversation with him and get
> him used to the idea of saying yes to seven years or eight years.

4

5

6

> Q.  Whatever it may have been?

7

> A.  Whatever it may have been.

8

*Id.*

9

        Conley then testified that he ultimately raised the offer to 10 years and that he made the

10

ten year offer to Mr. Platt "once or twice."  *Id.* at 112-13.  He stated that Platt was "clear on what

11

the offer was," and that Platt told Conley, "I need a little bit more time to talk with him, I need a

12

little bit more time to talk with him."  *Id.* at 113.  Conley testified that "the issue of settling the

13

case" came up every time he saw Mr. Platt in the courtroom.  Mr. Platt told Conley that "he

14

would convey it to his client and talk with him and get back to me."  *Id.* at 114.  Conley explained

15

that Platt made counteroffers that were not acceptable to him and "I was just kind of stuck at the

16

10."  *Id.*

17

        Conley finally came to realize that the ten year offer "wasn't going to happen."  *Id.*  He

18

testified he had a "clear" memory that he made that offer directly to White in open court.  *Id.* at

19

115.  He explained:

20

> My memory is that I come into court, the 10-year offer had been on
> the table for a long, long time and I said this is the last time that the
> 10-year offer is going to be on the table. . . I said if he doesn't
> accept the offer at the next court appearance two or three weeks
> later, then the offer was going to be revoked and we would just go
> to trial.

21

22

23

24

*Id.*  Conley testified that he was "looking at Mr. White, speaking to the court."  *Id.*  He stated he

25

was looking directly at White from approximately 25 feet away, and the courtroom was "very

26

quiet." [7]  *Id.* at 116.  He spoke "loudly and clearly," because he wanted to assure himself that

27

28

---

        [7]  Conley estimated that the state court was approximately "a quarter the size" of the
federal courtroom in which the evidentiary hearing was then taking place.

1    White understood the gravity of the situation and that the 10 year offer would not be available if it

2    was not accepted within two or three weeks.  *Id.* at 116-17.  Conley wanted to "assure [himself]

3    that [White] understood that I was serious."  *Id.* at 117.

4         Conley testified that White was listening to what he was saying and was making "eye

5    contact" in a defiant manner.  According to Conley, White was "staring" at him "like maybe he

6    thought I didn't mean it."  *Id.*  Conley did not know why his statements were not reflected in the

7    court record, because "we were on the record as far as I understood."  *Id.* at 118.

8         Mr. Conley further testified that at the February 25, 2009 hearing, he informed the court

9    that the offer was "fifteen to life" because "the 10-year offer had been previously rejected and this

10   is where it was at this point."  *Id.* at 120.  He stated that his "in-court offer to Mr. White took

11   place before this hearing," and that the in-court offer was the last time he extended the ten year

12   offer.  *Id.* at 121.  Conley also explained that Platt/White did not formally reject the 10 year offer,

13   but when White failed to accept it at the next court hearing Conley "presumed that the offer had

14   been rejected."  *Id.*  At that point, the offer increased to 15 years to life.  *Id.*

15        Mr. Conley also testified that during the course of the instant federal habeas proceedings

16   he ran into Mr. Platt in a state courtroom, at which point Platt stated:

17            Well I'm going [to have his deposition taken] on such and such a
             day and I'm just going to tell them the truth.  I'm just going to tell
18            them what happened, that you made a 10-year offer to me, that I
             took it to him and that I told him he was a fool if he didn't take the
19            offer, that he rejected it.

20   *Id.* at 122-23.  Platt also told Conley that he thought the 10 year offer was "reasonable" and that

21   "he went to the jail to talk to Mr. White and told him that he should seriously consider taking that

22   offer, that he's being a fool or he's being stupid and turned the offer down."  *Id.* at 123.

23        On cross-examination, Mr. Conley conceded that he did not know whether Mr. Platt

24   actually communicated his plea offers to Mr. White.  However, Platt told him during discovery in

25   this action that he had "done just that."  *Id.* at 125.  Conley agreed that when he extended the ten

26   year offer to White in open court, he did not characterize all the terms and conditions of that

27   offer.  *Id.* at 126.  He also agreed that "Mr. White couldn't on the spot accept [that] offer without

28   /////

1   knowing all the terms and conditions of the offer." *Id.*  Conley also explained that his ten year

2   offer was for "something less than second-degree murder." *Id.* at 133.

3       **D.  The Parties' Subsequent Briefing**

4       After the evidentiary hearing took place, the parties submitted supplemental briefing.  The

5   court summarizes that briefing below.

6       **1.  White's Supplemental Brief**

7       White concedes that the decision in *Cullen v. Pinholster* prevents this court from utilizing

8   evidence obtained in the evidentiary hearing in its review of his ineffective assistance of counsel

9   claim under 28 U.S.C. § 2254(d), absent the application of any relevant exception to that bar.

10   ECF No. 39 at 5.  However, he also argues that the California Supreme Court's failure to hold an

11   evidentiary hearing on White's claim "left significant, pivotal factual disputes unresolved"

12   regarding whether Platt conveyed the prosecution's 10-year settlement offer to White and

13   whether White understood and rejected that offer.  *Id.* at 7.  White argues that, as a result, the

14   decision of the California Supreme Court "lacks a reasonable factual foundation in the state court

15   record." *Id.* at 8.  He argues that there was no "basis in the state court record to disregard Mr.

16   White's declaration and allegations that Mr. Platt failed to communicate the 10-year plea bargain

17   offer." *Id.* at 12.  He also argues that "the California Supreme Court unreasonably resolved

18   significant factual disputes against White without sufficient evidence."  ECF No. 41 at 17.

19       White further argues that under AEDPA review, trial counsel's advice to White about

20   whether to accept or reject the plea offer violated the standards set forth in *Lafler*.  Specifically,

> 21-24   Even assuming Platt communicated the prosecution's 10-year offer to White, he could not possibly have provided competent advice, because he misunderstood the legal significance of White's blood-alcohol level – claiming it was "not the issue" and, therefore, did not advise White of the importance of this issue and vastly understated and underrepresented the risks posed by going to trial.

25   ECF No. 39 at 6.  White contends, in essence, that Platt's misunderstanding of the significance of

26   White's blood alcohol level could have affected the advice he gave White about the dangers of

27   rejecting a plea offer and proceeding to trial.  *Id.* at 9.

28   /////

1       White also contends that Platt misunderstood central issues in the trial; stipulated to

2   matters that lessened the prosecution's burden of proof, such as White's blood-alcohol level at the

3   time of the accident; improperly allowed White to testify; and gave White ineffective advice

4   about the advisability of proceeding to trial that "could have influenced him to reject the 10-year

5   offer, assuming for the sake of argument that the offer was communicated by Mr. Platt." *Id.*

6   White argues that "had he been competently advised of the risks of trial, including the enormous

7   significance of his alcohol intoxication while driving – which was not disputed due to the

8   stipulation, White could not rationally have refused the prosecution's last 10-year offer." *Id.* at

9   10.  White further argues that there is no evidence he was fully apprised of the particulars of the

10  10-year plea offer or that he "understood all its unstated terms and conditions, and rejected it."

11  *Id.* at 11.

12      White also argues that there is no evidence in the record before the state court regarding

13  exactly what Platt told him about the prosecutor's repeated plea offers and no evidence to support

14  Platt's evidentiary hearing testimony that he advised White to accept the government's 10 year

15  plea offer.  *Id.* at 14.  Similarly, according to petitioner, the record does not contain any indication

16  that Platt told White he was likely to be convicted of second degree murder if he went to trial.  *Id.*

17  White argues that "the California Supreme Court's apparent conclusion that Platt provided

18  effective representation during the plea stage was unreasonable in view of the factual conflict

19  concerning the making and communication of the prosecution's 10-year offer." *Id.*

20      White provides a detailed analysis of Platt's trial presentation to support his argument that

21  Platt did not give him correct advice regarding the plea offer because Platt did not understand the

22  factual and legal issues confronting White as a result of the charges against him and the facts of

23  his case.  *Id.* at 15-20.  He contends that the terms of any "in-court offer" made by Conley in open

24  court were "too vague to accept or reject on the spot." *Id.* at 22.  White argues that he needed

25  "competent counsel to explain the terms of the offer and the consequences of acceptance." *Id.*

26  He states, "if the record does not reflect facts showing that Platt effectively advised White

27  concerning the risks of trial versus the benefits of accepting the 10-year plea offer, it cannot be

28  /////

1    concluded that Platt provided effective representation under *Lafler*." *Id.* at 21.  White

2    summarizes his arguments as follows:

3            Accordingly, respondent's arguments fail to provide any evidence
             establishing that Platt communicated each or any of the 10-year
4            offers, advised White about the merits of the offers in light of the
             substantial risks of going to trial and urged White to accept the
5            offer.  Moreover, the evidence shows that Platt misunderstood an
             important legal and factual issue in the case – the significance of
6            White's blood-alcohol level and advised the court that it was not
             important and stipulated to White's blood-alcohol level, relieving
7            the prosecution of the burden of proving significant elements of the
             charges.    Therefore,  since  Platt  misunderstood  the  profound
8            significance of White's blood-alcohol level, he could not have
             advised White competently with regard to the 10-year offer, as he
9            would have greatly understated and underrepresented the risk posed
             by trial in which White's blood-alcohol results would be established
10           at twice the legal limit by stipulation.  As a result, the standards of
             *Lafler v. Cooper* were not met, and White received ineffective
11           assistance of counsel.

12   *Id.* at 23.

13                       **2.  Respondent's Supplemental Brief**

14           Respondent agrees with petitioner that, absent any applicable exception, the decision in

15   *Pinholster* precludes this court from considering any of the evidence introduced at the evidentiary

16   hearing in its analysis of White's claim of ineffective assistance of counsel.  ECF No. 40 at 5.

17   Respondent argues, however, that the record before the California Supreme Court at the time it

18   rendered its decision on White's habeas petition, which included the article in the Stockton

19   Record and the June 14, 2012 declaration of San Joaquin County Public Defender Michael

20   Bullard, supported the conclusion that the prosecutor made a 10 year offer to settle White's case.

21   *Id.* at 6-7.  Respondent also argues that Platt's statements at the March 17, 2009 ex parte hearing

22   reflect that Platt told White about the ten year offer.  *Id.* at 7.  He contends that White would have

23   objected to or commented on Platt's reference to these prior settlement offers if he had only heard

24   about them for the first time at the hearing, especially given White's active involvement in his

25   own defense.  *Id.* at 8.

26           Respondent also argues that even assuming Platt did not convey the 10-year offer to

27   White, petitioner did not suffer prejudice because Conley conveyed the offer to White, himself, in

28   open court.  *Id.*  Respondent argues that White's allegation that Platt never conveyed the offer to

Whit is not credible, given the inconsistencies in White's testimony at the evidentiary hearing and Platt's testimony that he conveyed the prosecutor's offers to White. *Id.* at 11-14. Respondent argues the court record demonstrates that White "was not interested in settling the case for a ten-year term." *Id.* at 14-15.

Respondent disagrees that Platt failed to understand the significance of White's blood-alcohol level to the issues in this case. *Id.* at 9. He argues the record establishes that Platt understood the law and the facts and structured his defense strategy to minimize the weaknesses in the evidence. *Id.* at 9-10, 15-17. He also argues that Platt's trial performance, including his decision to have White testify, does not support White's claim that Platt misadvised him about the strengths and weaknesses of his case. *Id.* at 17-19.

Finally, respondent argues that the record reflects White did not suffer prejudice from the actions of his trial counsel because he failed to accept the prosecutor's 10-year offer after that offer was extended to him by the prosecutor in open court. He argues this demonstrates petitioner would not have accepted a 10-year offer even if it had been made to him. *Id.* at 20. Respondent also points to evidence at the evidentiary hearing that White wanted to go to trial, that he did not want to spend a significant amount of time in prison, and that he did not believe his conduct constituted second-degree murder. *Id.* Respondent argues, "White's strong desire to go to trial would [have] prevailed over any plea offer of 10 years." *Id.* He also argues it was "White's desire to go to trial and convince the jury that the facts were not so egregious that caused him to reject the ten-year offer." *Id.*

### 3. **White's Reply**

White argues that "not a single scrap of paper in the state court record indicates that Platt discussed Conley's in-court offer (or any other offer) with White and advised him of the urgency of accepting it, because the alternative was a defective trial strategy that carried very high chances of conviction of second-degree murder and a 15 to life sentence." ECF No. 41 at 7. White argues the record "strongly suggests" that he did not receive effective advice from Platt about the prosecution's plea offers. *Id.* He states that he was "misled" about the merits of any defense to the charges.

1    White also argues that he was sure to lose and that "the case never should have gone to

2    trial." *Id.* at 9.  He argues, "[t]rial was, by far, White's worst option, and White should have been

3    advised of all this in relation to all settlement offers received during Platt's representation." *Id.*

4    He argues, "the fact that White went to trial on a virtually defenseless case rather than accept the

5    10-year settlement offer strongly suggests that White either was not aware of the option to settle

6    the case, or that he received ineffective advice regarding the 10-year offer." *Id.* at 10.

7    White also argues that he suffered prejudice from Platt's deficiencies because, even if the

8    prosecutor conveyed the offer to him in open court, he was entitled to specific, detailed advice

9    concerning this last in-court offer, but failed to receive it. *Id.* at 16.  He argues that "no evidence

10   establishes that White heard and understood the offer." *Id.*  He contends that he was "prejudiced

11   by trial counsel's failure to communicate the numerous 10-year offers from the prosecution and to

12   stress the urgency of accepting the offer." *Id.* at 17.

13   **E.  Analysis**

14   **1.  <u>Effect of the decision in *Cullen v. Pinholster*</u>**

15   As explained above, the district court requested that this court recommend a decision as to

16   what extent, if any, the decision in *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011) "limits the

17   evidence this Court may consider pursuant to its review under 28 U.S.C. § 2254(d)."  ECF No. 29

18   at 2.

19   In *Pinholster*, the United States Supreme Court held that federal review of habeas corpus

20   claims under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated

21   the claim on the merits." *Id.*, 131 S. Ct. at 1398.  *See also Stokley v. Ryan*, 659 F.3d 802, 807 (9th

22   Cir. 2011) ("when a petitioner seeks habeas relief under 28 U.S.C. § 2254(d)(1), federal courts

23   are restricted to the state court record when deciding claims previously adjudicated on the merits

24   by the state courts.").  As Judge Singleton observed, the decision of the California Supreme Court

25   was a decision on the merits of White's claim of ineffective assistance of counsel.  Therefore, this

26   court may not use evidence introduced at the September 12, 2016 evidentiary hearing to resolve

27   /////

28   /////

1   White's ineffective assistance of counsel claim unless White can overcome the limitation of

2   § 2254(d)(1) or (d)(2) on the record that was before the state court.  131 S. Ct. at 1400.[8]

3        "In some limited circumstances, (the Ninth Circuit) ha[s] held that the state court's failure

4   to hold an evidentiary hearing may render its fact-finding process unreasonable under

5   § 2254(d)(2)."  *Hibbler v. Benedetti*, 693 F.3d 1140, 1147 (9th Cir. 2012); *see also Taylor v.*

6   *Maddox*, 366 F.3d 992, 999–1001 (9th Cir. 2004).  For example, in *Earp v. Ornoski*, 431 F.3d

7   1158, 1169 (9th Cir. 2005), the Ninth Circuit held that a state court's determination of the facts

8   was unreasonable when it failed to hold an evidentiary hearing because "such a hearing was

9   necessary to make the credibility determination upon which rejection of [the petitioner's] claim

10  depends."  Of course, a state court is not required to hold an evidentiary hearing to resolve every

11  disputed factual question because "such a per se rule would be counter not only to the deference

12  owed to state courts under AEDPA, but to Supreme Court precedent."  *Hibbler*, 693 F.3d at 1147.

13  However, "[t]he ultimate issue is whether the state's fact-finding procedures were reasonable; this

14  is a fact-bound and case-specific inquiry."  *Id.*

15       "If the record ultimately proves to be incomplete, deference to the state court's judgment

16  would be inappropriate because judgment on a materially incomplete record is not an adjudication

17  on the merits for purposes of § 2254(d)."  *Winston v. Kelly*, 592 F.3d 535, 555-56 (4th Cir.

18  2010).  *See also Williams v. Woodford*, 859 F. Supp. 2d 1154, 1160-61 (E.D Cal. 2012) (where

19  state court was unreasonable in failing to hold an evidentiary hearing on petitioner's claim in light

20  of the deficiencies in the record before the state court, petitioner's federal habeas claim was

21  entitled to de novo review).  In *Taylor v. Maddox*, 366 F.3d 992, 1000-01 (9th Cir. 2004), the

22  Ninth Circuit made the following comments:

23              As noted, intrinsic challenges to state-court findings pursuant to the
            "unreasonable determination" standard come in several flavors,
24          each presenting its own peculiar set of considerations.  No doubt
            the simplest is the situation where the state court should have made
25          a finding of fact but neglected to do so.  In that situation, the state-

26  ─────────────────────
27       [8]  In *Pinholster* the Supreme Court did not specifically address habeas review pursuant to
    § 2254(d)(2).  However, the Ninth Circuit has concluded that evidence introduced in a federal
    evidentiary proceeding is also irrelevant to § 2254(d)(2) review.  *Gulbrandson v. Ryan*, 738 F.3d
28  976, 994 n.6 (9th Cir. 2013), *cert. denied*, 134 S.Ct. 2823 (2014).

court factual determination is perforce unreasonable and there is nothing to which the presumption of correctness can attach.

As set forth above, White argues in his supplemental brief that the California Supreme Court's failure to hold an evidentiary hearing on White's claim of ineffective assistance of counsel during the plea bargain process "left significant, pivotal factual disputes unresolved" regarding whether Platt conveyed the prosecution's 10-year settlement offer to White and whether White understood and rejected that offer. ECF No. 39 at 7. White argues that, as a result, the decision of the California Supreme Court on this claim "lacks a reasonable factual foundation in the state court record." *Id.* at 8. This court agrees. Under the circumstances of this case, and in light of gaps in the record before the state court with regard to whether the prosecutor extended a 10-year offer to White and whether White received that offer, the state court acted unreasonably in failing to supplement the record with additional evidence. The state court decision is therefore based on an unreasonable determination of the facts in light of the evidence (or absence thereof) presented in the state court proceeding. Accordingly, the *Pinholster* decision does not preclude the consideration of evidence introduced at the evidentiary hearing to resolve credibility issues central to White's claim of ineffective assistance of counsel. *Pinholster*, 131 S.Ct. at 1398.

However, for the following reasons, under *de novo* review, this court concludes that White is not entitled to habeas relief on his ineffective assistance of counsel claim. The evidence at the evidentiary hearing reflects that the prosecution's 10-year plea offer was conveyed to White but that he rejected it.

**2.  Merits of White's Claim of Ineffective Assistance of Counsel**

**a.  White is Not Entitled to Relief under *De Novo* Review**

Judge Singleton found that prosecutor Conley conveyed a ten-year plea offer to trial counsel Platt. The testimony elicited at the evidentiary hearing confirms this. Platt did not deny that such an offer was extended to him, either at the evidentiary hearing or during his deposition.

/////

/////

29

1    Conley specifically testified that he made an offer to Platt to settle White's case for ten years in

2    prison.[9]

3         The court must next determine whether the ten year offer was conveyed to White by Platt,

4    or whether petitioner learned of it from the prosecutor.  There is conflicting evidence concerning

5    whether Platt communicated the offer to White.  White testified that the only plea offer Platt

6    conveyed to him was an offer for fifteen years to life, and that this offer was conveyed on the day

7    that Conley made his first appearance in court as the prosecutor in this case.  However, both Platt

8    and Conley testified that Conley would not have made such an offer because it mirrored the

9    sentence White would receive if he were convicted of second-degree murder and therefore was

10   not an offer at all.  Conley also testified that he always let previous offers conveyed by another

11   prosecutor stand after he was assigned to a case because he felt this was fair to the defendant.  As

12   noted above, Conley testified that he extended a 10-year plea offer to Platt, and Platt testified it

13   was his duty and practice to convey all offers to his clients and that he followed this practice with

14   White.  Although he could not remember particulars, Platt was quite confident that he acted

15   consistent with that practice and his testimony in that regard was credible.  Conley also testified

16   that Platt specifically told him that he conveyed the ten year offer to White.  Conley credibly

17   testified that Platt kept telling him he needed more time to talk to White and that Platt made

18   several counteroffers.  All of this evidence supports Platt's testimony that he conveyed all of the

19   government's plea offers, including the ten-year offer, to White.  There was no testimony

20   suggesting any motive for Platt to keep an offer from the prosecutor a secret from White.

21        In contrast, the court finds not credible White's testimony that the only offer Platt ever

22   conveyed to him was an offer for fifteen years to life in prison and that Conley made this offer on

23   the same day he took over as the prosecutor in this case.  Conley testified that he would not have

24   made such an offer because it would have been "unfair," "ridiculous," and "not an offer."  He

25   also testified that he left open the previous offers that had been made to White because this was

26

27        [9] Further, both Conley and Platt testified that they had a conversation shortly before the
     evidentiary hearing in this case wherein Platt told Conley he remembered that Conley made a ten
28   year offer.

1 his practice and because he believed it was the fair thing to do.  The court finds Conley's

2 testimony in this regard to be credible.

3      White's claim fails for an additional reason.  Even if, as he insists, Platt did not convey the

4 ten-year offer to White, the evidence shows that White learned of the offer directly from the

5 prosecutor.  This court finds credible Conley's testimony that he conveyed the ten year offer to

6 White in the courtroom.  Conley "clearly" remembered that he spoke directly to White in a loud

7 voice in a quiet and relatively small courtroom, and that White was looking directly at him when

8 he spoke.  Although White suggested that he might not have heard Conley's offer, there was no

9 indication during the evidentiary hearing before the undersigned that White had a serious hearing

10 deficiency or was unable to understand what was being said.  White had no apparent problem

11 hearing what was being said in the federal courtroom, even though it is significantly larger than

12 the state courtroom in which Conley's offer was made.  In short, the court finds White's

13 testimony that he did not remember, or did not hear, Conley's plea offer in open court not to be

14 credible.[10]  After review of all of the evidence before the court, including the evidence introduced

15 at the evidentiary hearing, the court concludes that petitioner was made aware of the plea offer for

16 ten years in prison.

17      The next question is whether White would have accepted the ten year offer.  This question

18 is answered by White's failure to accept the offer even after the prosecutor conveyed it to him in

19 open court.  There was significant credible testimony at the evidentiary hearing that White was

20 not interested in an offer for 10 years in prison.  The court credits Platt's testimony that he

21 conveyed all of the prosecutor's offers to White but that White did not want to accept them

22 because he did not want to serve significant time in prison and did not believe his behavior

23

24    [10]   Platt's testimony regarding whether Conley re-conveyed the ten-year offer to White in the state courtroom was confusing and contradictory.  It is not dispositive evidence either way. Platt first testified that he did not remember such an offer. But he nonetheless went on to describe

25 his reactions to the offer as it was being made, before denying again that he remembered the offer.  Thus, although Platt testified he did not remember Conley making the ten-year offer in

26 open court, he was able to articulate the particulars of it and even remembered his reaction to the offer and what he said to White about it.  Although Platt's inconsistency in this regard renders his

27 testimony on this courtroom exchange less than convincing, other testimony plainly shows that White was well aware of the ten year offer.

28

1  warranted a lengthy prison sentence.  Conley testified that Platt told him he advised White to

2  accept the ten-year offer but that White rejected it.  Conley testified he ultimately concluded that

3  White was not willing to accept any of his offers.  In light of all of this evidence, the court

4  concludes that White has failed to show he was prejudiced by the failure, if any, of his trial

5  counsel to convey the prosecution's plea offer for ten years in prison.  Accordingly, he is not

6  entitled to relief on his claim of ineffective assistance of counsel.  *Strickland*, 466 U.S. at 697.

7        **b.  <u>Even Under AEDPA Review, Petitioner is Not Entitled to Relief</u>**

8        As set forth above, the California Supreme Court summarily denied petitioner's claim

9  without providing a statement of reasons.  Under these circumstances, this court must determine

10  what arguments or theories could have supported the state court's rejection of this claim.  *See*

11  *Richter*, 562 U.S. at 102.  ("Under § 2254(d), a habeas court must determine what arguments or

12  theories supported or, as here, could have supported, the state court's decision; and then it must

13  ask whether it is possible fairminded jurists could disagree that those arguments or theories are

14  inconsistent with the holding in a prior decision of [the United States Supreme Court].").

15        The Supreme Court could reasonably have determined that the prosecutor made a ten-year

16  plea offer and conveyed that offer to White in open court, but that White rejected it.  That

17  determination was supported by the declaration of San Joaquin County Public Defender Michael

18  Bullard and the affidavit of respondent's counsel, which were both before the Supreme Court at

19  the time it rendered its decision.  The California Supreme Court could also reasonably have

20  determined, based on Platt's statements at the March 17, 2009 ex parte court hearing, that Conley

21  did not convey to Platt a 10 year offer to settle White's case.  In that case, Platt's failure to

22  convey a non-existent offer would not constitute deficient performance.  Because there was

23  evidence before the California Supreme Court to support a decision denying White's ineffective

24  assistance counsel claim under either scenario, White is not entitled to federal habeas relief, even

25  under AEDPA review.  White has failed to carry his burden of proof to show that the decision of

26  the Supreme Court was "so lacking in justification that there was an error well understood and

27  /////

28  /////

1    comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562

2    U.S. at 103.  *See also Pinholster*, 563 U.S. 170, 182 (the petitioner "carries the burden of proof"

3    under AEDPA).

**3.  Platt's Advice With Regard to Acceptance or Rejection of the Plea Offer**

5        As set forth above, the district court also asked this court to issue findings and

6    recommendations regarding "whether counsel's advice to White satisfied *Lafler v. Cooper*, 132

7    S.Ct. 1376, 1385-86 (2012), with respect to the 10-year plea bargain offer."  ECF No. 29 at 2.

8    The evidence shows that it did.

**a.  White is Not Entitled to Relief under *De Novo* Review**

10        In *Lafler*, the United States Supreme Court held that:

> Where counsel's ineffective advice led to an offer's rejection, and
> where the prejudice alleged is having to stand trial, a defendant
> must show that but for the ineffective advice, there is a reasonable
> probability that the plea offer would have been presented to the
> court, that the court would have accepted its terms, and that the
> conviction or sentence, or both, under the offer's terms would have
> been less severe than under the actual judgment and sentence
> imposed.

16    *Id.*, 132 S. Ct. at 1380.  On pages 1385-86 (cited by the district court), the Supreme Court

17    discussed the definition of prejudice which the court articulated in its decision.  132 S.Ct. at 1385-

18    86.

19        As set forth above, Platt testified that he advised White to accept the 10 year offer.  ECF

20    No. 38 at 33 ("I did. I made that recommendation that he should think long and hard before he

21    draws a line in the sand and wants to go to trial.").  He understood very well that before White

22    could plead guilty White would need to fully understand the charges to which he was going to

23    plead and the full extent of his possible punishment.  *Id.* at 48.  Conley testified that Platt told him

24    he advised White to accept the plea offer and that he would be "a fool if he didn't take the offer,"

25    but that White rejected it.  *Id.* at 122-23.  In light of this testimony, White has failed to show that

26    Conley improperly advised him to reject the plea offer.

27        Platt also testified that he discussed the strengths and weaknesses of White's case with

28    White but that White did not want to accept an offer which would result in any significant time in

1    prison.  Platt further testified that he followed his normal practice of conveying every plea offer to

2    his clients, and that he discussed with White "the risks of going to trial." *Id.* at 11.  Platt testified

3    that when he would communicate a plea offer to White, White would "say that's too much, I'm

4    not going to resolve it with that," *id.* at 19-20, or would respond that an offer was "too much time,

5    that the facts weren't going to show what Mr. Conley thought they were going to show." *Id.* at

6    32.  It is clear from the evidentiary hearing testimony that Platt and White had numerous

7    discussions about the prosecutor's plea offers and the advisability of accepting those offers.

8         As set forth above, trial counsel are strongly presumed to have engaged in conduct that

9    falls within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689;

10   *Hughes*, 898 F.2d at 702.  Further, this court must give Platt "the benefit of the doubt,"

11   *Pinholster*, 563 U.S. at 196, and must make an effort "to eliminate the distorting effects of

12   hindsight."  *Strickland*, 466 U.S. at 669.  Counsel are not required to "discuss in detail the

13   significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or

14   "strongly recommend" the acceptance or rejection of a plea offer.  *Turner*, 281 F.3d at 881.

15   Although counsel must fully advise the defendant of his options, he is not "constitutionally

16   defective because he lacked a crystal ball."  *Id.*  The relevant question is not whether "counsel's

17   advice [was] right or wrong, but . . . whether that advice was within the range of competence

18   demanded of attorneys in criminal cases."  *McMann*, 397 U.S. at 771.

19        On this record, White has failed to overcome the "strong presumption" that Platt's advice

20   "with respect to the 10-plea plea bargain offer" was within the wide range of reasonable

21   professional assistance.  The court's conclusion in this regard is also influenced by the facts that

22   that Platt has been a criminal defense attorney since 2003 and was previously employed as a

23   deputy district attorney and a state court judge.  There is no evidence that the advice White

24   received from Platt was "so incorrect and so insufficient that it undermined his ability to make an

25   intelligent decision about whether to accept the [plea] offer."  *Turner*, 281 F.3d at 880.  On the

26   contrary, Platt advised White to accept the prosecution's ten-year plea offer, sound advice which

27   White rejected.

28   /////

34

1    As noted above, White argues in his supplemental briefing that Platt's performance at trial

2    demonstrates that he misunderstood the issues in the case and that this misunderstanding in all

3    likelihood informed his deficient advice to White with regard to whether to reject the plea offer

4    and proceed to trial.  This court disagrees.  Platt's decisions regarding the presentation of the trial

5    defense is not necessarily related to his advice to White about accepting the plea offer.  Platt's

6    performance at trial does not reflect what he told White prior to trial about the risks of rejecting

7    the plea offer, but simply reflects what he thought was the best way to present the evidence at

8    trial.  In any event, Platt testified he advised White to accept the offer and cautioned White that

9    his optimistic view about the evidence against him was wrong.  This advice proved to be

10   accurate.  White simply had an unrealistic view of how the case would resolve.  After a review of

11   the record, this court concludes that Platt's presentation of the defense case at trial does not

12   demonstrate that the advice he gave White about the prosecution's ten-year offer was outside "the

13   wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

14   White has also failed to demonstrate prejudice.  As explained above, the evidence reflects

15   that White did not want to accept a plea offer if it involved significant prison time and he believed

16   the facts did not support the second-degree murder charge against him.  Platt testified that White

17   decided not follow his advice to accept the 10 year offer, and that he told White he was "wrong in

18   his evaluation of what the evidence would show" at trial.  ECF No. 38 at 32.  This evidence

19   reflects that White would not have accepted the 10-year offer even if Platt informed him that his

20   chances at trial were poor.  There is no evidence that incorrect advice from Platt caused White to

21   reject the 10-year plea offer.

22                     **b.  Even Under AEDPA Review, Petitioner is Not Entitled to Relief**

23   There was very little evidence before the California Supreme Court for review of this

24   claim.  However, assuming AEDPA review, White is still not entitled to habeas relief.  If White

25   were to prevail on this claim under AEDPA review, the appropriate remedy would be to hold an

26   evidentiary hearing to resolve the factual issues.  The court has held such a hearing, and for the

27   reasons stated above, White has failed to show that he is entitled to relief.

28   /////

1    In any event, White has failed to show that the California Supreme Court's decision that

2  his trial counsel did not render ineffective assistance in failing to properly advise him whether to

3  accept or reject the plea offer is contrary to or an unreasonable application of United States

4  Supreme Court authority.  There was no evidence before the California Supreme Court that Platt

5  advised petitioner to reject a ten-year plea offer that was offered to him.  Further, applying the

6  strong presumption that Platt's performance was "within the wide range of reasonable

7  professional assistance," the California Supreme Court could reasonably have concluded that

8  Platt's advice to White with respect to the government's 10-year plea offer was not "so incorrect

9  and so insufficient that it undermined his ability to make an intelligent decision about whether to

10  accept the [plea] offer." *Turner*, 281 F.3d at 880.  White has failed to sustain his burden of proof

11  as to this claim.   Accordingly, it must be denied.

12  **IV. Conclusion**

13    For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

14  application for a writ of habeas corpus be denied.

15    These findings and recommendations are submitted to the United States District Judge

16  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

17  after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within fourteen days after service of the objections.  Failure to file

21  objections within the specified time may waive the right to appeal the District Court's order.

22  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

23  1991).  In his objections petitioner may address whether a certificate of appealability should issue

24  in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section

25  2254 Cases (the district court must issue or deny a certificate of appealability when it enters a

26  final order adverse to the applicant).

27  DATED:  December 15, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

36